**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 29, 2013**

# In the Court of Appeals of Georgia

A12A2511. SIKES v. GREAT LAKES REINSURANCE (UK) PLC.

MCMILLIAN, Judge.

Jimmy Sikes ("Sikes") appeals from the trial court's order granting summary judgment to Great Lakes Reinsurance (UK) PLC ("Great Lakes") on Sikes' lawsuit to recover damages suffered in connection with the loss of his home and its contents due to a fire. For the reasons that follow, we vacate and remand with direction.

The record shows that Sikes purchased a policy of homeowners' insurance (the "policy") from Great Lakes that was effective from August 7, 2009 through August 7, 2010, for 841 McGregor Road, Alston, Georgia (the "property"). In early October 2009, there was a fire at Sikes' home making it uninhabitable, and he lost all of his property that was in the house at the time of the fire.[1] Within a day or two, Sikes

---

[1] After an investigation on October 5, 2009, an agent of the Georgia Insurance and Fire Safety Office concluded the cause of the fire was unknown.

notified Great Lakes about the fire and made a claim under the policy for his damages.

On December 22, 2009, Great Lakes conducted, as part of its investigation, an Examination Under Oath ("EUO") of Sikes, who had his attorney present with him. Sikes testified that he was presently unemployed, but that he previously worked for a company selling grills throughout 2007, 2008, and part of 2009. Sikes testified that sometime in 2009, he began building and selling custom made grills "in a shop in [his] house," which is "metal building." Sikes received orders for the grills from an internet website, had a shop of materials on his property to build grills, and sold more than ten grills for $800 to $22,000. After this testimony, Sikes was directed to look at the second question on the application he completed when he obtained the policy, which asked if there was any kind of business on the premises. Sikes answered, "I mean, I go out there and build . . . I don't have a business there . . . it's kind of like a place at your house where you do stuff if you want to do it . . . it's not a business . . . I work in it."

During his EUO, Sikes also was asked, "Do you have a dock?" and he answered "I got a dock on my pond." Sikes was directed to look at question eight on

the policy application, which asked if there was a dock on the premises. Sikes answered, "The dock?" and stated, "I don't know whether you would call it a dock or not but there is a ramp that goes out in my pond."

Sikes additionally was asked during his EUO "What is the acreage on the property?" and he answered, "[s]even-point-something. I don't know exactly." Sikes was directed to look at question fourteen on the policy application regarding whether his property had more than five acres. Sikes stated, "Number 14. More than five acres, I don't know that. It must have been a misunderstanding there but it's seven-point-something."

On January 28, 2010, Great Lakes paid $186,892.46 to Sikes' mortgage holder. On April 8, 2010, Great Lakes rescinded the policy, returned Sikes' premium payment, and informed Sikes his claim for the remaining fire damage to his property was denied due to material misrepresentations on the policy application. Sikes responded with a letter in which refused to acknowledge the denial of coverage and returned the check refunding his premium payment.

Sikes filed this lawsuit on June 30, 2010, and Great Lakes subsequently moved for summary judgment. In support of its motion, Great Lakes submitted an affidavit from an underwriting manager averring that Sikes admitted he made

3

misrepresentations on his policy application when he answered "no" to the questions which asked whether there was a dock on the property, whether he conducted a business on the property and whether the property was more than five acres. Further, the affidavit stated that these misrepresentations "changed the nature, extent and the character of the risk," and that the insurer would not have accepted the risk and the policy would not have been issued if Sikes had not made these misrepresentations.

In response to Great Lakes' motion, Sikes provided two affidavits denying he made misrepresentations on the policy application. Sikes attached a certified copy of the warranty deed and land plat to his property, which detailed three tracts, with tract I being 0.68 acre, tract II being 2.93 acres, and tract III being 4.19 acres. Sikes averred that his home was situated on the 4.19 acre tract, and that no other tracts of land or structures were to be covered under the policy. In addition, Sikes submitted an affidavit of an underwriting agent for Great Lakes, Lisa Evans, stating that he "asked for home owners only," that they "did not discuss insuring any shops or other outside buildings," and that she "told him that the other structure coverage was for any small sheds that he might have around his house."

Sikes also stated in his affidavits he was not building grills at his home or adjoining property at the time of his application for the policy in August 2009.

4

Moreover, he averred he never considered the platform extending to his pond from which he fed fish to be a "dock." Sikes provided a dictionary definition of the word "dock,"[2] and a picture of the structure to demonstrate it was not a "dock." Sikes further stated that an agent for Great Lakes photographed the back of his home and was within "20 feet of the platform extending out to [his] pond which was in clear sight," and no one from Great Lakes contacted him after the photographs were taken to change the terms of his policy.

1. To void a policy of insurance for a misrepresentation, "the insurer must show that the representation was false and that it was material in that it changed the nature, extent, or character of the risk." (Citations omitted.) *Lively v. Southern Heritage Ins. Co.*, 256 Ga. App. 195, 196 (1) (568 SE2d 98) (2002). OCGA § 33-24-7 (b). On appeal, Sikes asserts the trial court erred by granting summary judgment to Great Lakes because there are disputed issues of material fact for a jury to resolve

---

[2] Sikes provided the definition of the word "dock" from Merriam Webster's dictionary as follows: "1: a usually artificial basin or enclosure for the reception of ships that is equipped with means for controlling water height, 2 a: a sloping ramp extending out into the water to serve as a place for landing or repairing ships, b: a ship's or boat's berth between two piers, 3 a: a place (as wharf or platform) for the loading or unloading of materials, b: a usually wooden pier used as a landing place or moorage for boats."

concerning whether he made misrepresentations in his policy application.[3] Great Lakes argues that the three misrepresentations at issue were clearly established by Sikes' sworn testimony in his EUO and that his later affidavits were insufficient to "impeach" his own prior sworn testimony.

"In each case, whether on motion for summary judgment or at trial, it must be decided if the testimony of a party-witness is contradictory. On summary judgment this is a question for the judge to decide." *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (343 SE2d 680) (1986); *Pope v. Hendley*, 206 Ga. App. 773, 775 (462 SE2d 607) (1992) Further,

> a trial court faced with a party's self-contradictory sworn testimony must construe the testimony against that party on a motion for summary judgment, unless he or she offers a reasonable explanation for the contradiction. Significantly, whether a reasonable explanation has been offered is a question of law for the trial court, and we must uphold a trial judge's determination on the issue unless it is clearly erroneous. In other words, this Court must affirm the trial court's ruling if there is any evidence to support it.

---

[3] On appeal, Sikes does not appear to dispute that a prudent insurer would have declined to issue the policy or would have issued the policy with different terms if he had given the same answers on the policy application questions that he did during the EUO.

(Footnotes and emphasis omitted.) *Bithoney v. Fulton-DeKalb Hosp. Authority*, 313 Ga. App. 335, 342 (1) (721 SE2d 577) (2011). See also *Nghiem v. Allstate Ins. Co.*, 292 Ga. App. 588 (664 SE2d 925) (2008).

In this case the trial court did not make any direct or express determinations concerning: (1) whether Sikes presented contradictory testimony; (2) whether his affidavits provided reasonable explanations for any contradictory testimony; or (3) whether his affidavits should be discounted and construed against him. Further, although Great Lakes suggests that the trial court did engage in such an analysis to reach its stated conclusion that "Plaintiff's affidavit does not create a genuine issue of material fact," the trial court's order is not as plain as Great Lakes portrays. The trial court's analysis immediately preceding this conclusion pertained to whether the insurer had provided an uncontradicted affidavit to show that it would not have issued the policy had it known the "truth," and the two cases the trial court cited in that portion of its order both involved situations where it was *undisputed* the insured had made misrepresentations on the policy. *Graphics Arts Mut. Ins. Co. v. Pritchett*, 220 Ga. App. 430, 432-433 (2) (469 SE2d 199) (1995); *Am. Gen. Life Ins. Co. v. Schoenthal Family*, 248 F. R. D. 298, 312 (N.D. Ga. 2008). Further, the sentence that follows the trial court's conclusion about Sikes' affidavits also refers to the

7

uncontroverted evidence on the question of whether the policy would have been issued. Thus, the trial court's order is unclear as to whether the trial court's conclusion that Sikes' affidavits failed to create a genuine issue of material fact referred to his failure to controvert the insurer's averments that it would not have issued the policy if Sikes had not made the purported representations, or whether it referred to Sikes' attempt to "explain" those misrepresentations.

Although in some instances such uncertainty in the trial court's order might not be especially problematic, in this instance we are faced with the quandary of what standard of review to apply to the trial court's determination. If we read the trial court's conclusion concerning Sikes' affidavits as expressing a finding that those affidavits did not provide a reasonable explanation for his contradictory testimony in the EUO, review of that finding would be made under a clearly erroneous standard. *Bithoney v. Fulton-DeKalb Hosp. Authority*, 313 Ga. App. at 342 (1). However, if the trial court did not, in fact, apply *Prophecy*, but rather looked at the evidence in its entirety without discounting the favorable testimony in Sikes' affidavits, that finding would be reviewed under our usual de novo standard on summary judgment, construing the evidence in Sikes' favor as the non-movant. *Rapp v. Escante, Inc.*, 304 Ga. App. 262 (695 SE2d 744) (2010). And, which standard of review is applied might

8

be outcome-determinative here, as is often the case on appeal. Thus, we must vacate and remand this matter back to the trial court to clarify its order and to determine whether *Prophecy* applies, and if so, to determine whether Sikes presented reasonable explanations regarding his contradictory testimony concerning (1) the acreage on his property, (2) whether he conducted a business on the premises, and (3) whether he had a dock on his property. If the trial court finds that Sikes did not present reasonable explanations, Sikes' contradictions must be construed against him; if, however, the trial court determines that Sikes has provided reasonable explanations for the contradictions, then the evidence must be construed in his favor as the non-movant on summary judgment.

*Judgment vacated and case remanded with direction. Barnes, P. J., and McFadden, J., concur.*