**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 30, 2017**

# In the Court of Appeals of Georgia

A17A0246. DOWNES et al. v. OGLETHORPE UNIVERSITY, INC.

ELLINGTON, Presiding Judge.

Erik Downes, then a 20-year-old college student, drowned in the Pacific ocean on January 4, 2011, while he was in Costa Rica attending a study-abroad program organized by Oglethorpe University, Inc. Elvis Downes and Myrna Lintner (the "Appellants"), as Downes's parents and next of kin, and in their capacity as administrators of Downes's estate, brought this wrongful death action alleging that Oglethorpe's negligence and gross negligence was the proximate cause of Downes's drowning. The trial court granted Oglethorpe's motion for summary judgment, and the Appellants appeal. We affirm because, as a matter of law, Downes assumed the risk of drowning when he chose to swim in the Pacific ocean.

Under OCGA § 9-11-56 (c),

> [s]ummary judgment is warranted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. We review the grant or denial of a motion for summary judgment de novo, and we view the evidence, and the reasonable inferences drawn therefrom, in a light most favorable to the nonmovant.

(Punctuation and footnotes omitted.) *Assaf v. Cincinnati Ins. Co.*, 327 Ga. App. 475, 475-476 (759 SE2d 557) (2014). See also *Johnson v. Omondi*, 294 Ga. 74, 75-76 (751 SE2d 288) (2013) (accord).

So viewed, the evidence shows the following. During the 2010-2011 academic year, Oglethorpe offered to their students a 12-day study-abroad trip to Costa Rica. The students were charged a fee for the trip to pay for expenses such as airfare, lodging, and food. The students were also required to pay the "per credit tuition rate" and were to receive four credits towards their degree for academic work associated with the trip. Oglethorpe retained Horizontes, a Costa Rican tour operator, to coordinate the trip and to provide transportation and an English-speaking guide.

2

Dr. Jeffrey Collins was then the director of Oglethorpe's student abroad program. According to Collins, Oglethorpe tried to follow "best practices," which is "defined as those protocols, procedures that as best and as far as possible ensure[] the safety of students." He acknowledged that students would swim on the trips. Collins was not aware of any potential dangers in Costa Rica and did no investigation to ascertain if there were potential dangers in Costa Rica.

During pre-trip meetings with Downes and the five other students who had registered for the program, Dr. Roark Donnelly and Dr. Cassandra Copeland, the two professors who accompanied the students on the trip, asked the students if everyone was a good swimmer, and the students agreed that they were. The group also discussed swimming in the ocean, including "that there are going to be currents." One of the professors told the students that, during a previous study-abroad trip to another location, a student had recognized that he was a weak swimmer and was required to wear a life jacket during all water activities. After hearing this, the students continued to express that they were good swimmers. Before leaving on the trip, the students were required to sign a release agreement which included an exculpatory clause pertaining to Oglethorpe.

The students and professors flew to Costa Rica on December 28, 2010. During the course of the trip, on the afternoon of January 4, 2011, the group arrived at a hotel on the Pacific coast. The six students, two professors, the guide, and the driver got into their bus and drove to a nearby beach, Playa Ventanas, which had been recommended by the hotel. Upon their arrival, there were other people on the beach and in the water. There were no warning signs posted on the beach, nor any lifeguards or safety equipment present.

The students swam in the ocean, staying mostly together, and eventually ventured out into deeper water. After about 20 minutes, Dr. Donnelly yelled for the students to move closer to shore. Shortly thereafter, student Robert Cairns, a former lifeguard, heard a female student screaming. Cairns swam towards the screams, and the student informed him that Downes needed help. Cairns realized that "some kind of current . . . had pulled us out." Cairns swam to within 10 feet of Downes and told him to get on his back and try to float. Downes could not get on his back, and Cairns kept telling him he had to try. After some time, Downes was struck by a wave, went under the water, and disappeared from Cairns's view. Downes's body was recovered from the ocean three days later.

The Appellants filed this wrongful death action claiming that Downes's death was the proximate result of Oglethorpe's negligence and gross negligence. Evidence adduced during discovery included the testimony of Dr. John Fletemeyer, the Appellants' expert in coastal sciences, that Downes had been caught in a "rip current"[1] when he became distressed and ultimately drowned. Dr. Fletemeyer opined that some beaches on the western coast of Costa Rica are particularly dangerous "mainly [because of] the lack of lifeguards," but also because of physical conditions such as "high wave energy force" and "pocket beaches," and that Playa Ventantas was a pocket beach.[2] He also testified that, in the context of the ocean, "every beach you go to is extremely dangerous." Other testimony showed that a continuing problem with drownings on beaches along the Pacific coast of Costa Rica was well publicized in Costa Rica, and that the United States Consular Authority in Costa Rica

_____

[1] The evidence showed that "[a] rip current is a strong outflow or stream of water usually beginning at the beach, moving perpendicular to the beach, beginning with the neck and then terminating at some point beyond the surf line[.]"

[2] Fletemeyer's testimony is not explicit as to why pocket beaches are dangerous to swimmers, although, in the context of the line of questioning, his testimony implies that the physical characteristics of pocket beaches are associated with the formation of rip currents.

had "published statistics about the danger of swimming on Costa Rica's beaches and identified specifically the west coast beaches as being the most dangerous."[3]

Following discovery, Oglethorpe moved for summary judgment and argued that (i) Oglethorpe owed no legal duty to Downes; (ii) the Appellants' negligence claims are barred by Downes's written waiver of liability and there is a lack of evidence that Oglethorpe was grossly negligent, and (iii) Downes assumed the risk of swimming in the ocean. The trial court granted Oglethorpe's motion for summary judgment.

1. The Appellants contend that Oglethorpe was not entitled to summary judgment on the ground that Downes, as a matter of law, assumed the risk of drowning when he swam in the ocean.[4] "The affirmative defense of assumption of the risk bars a plaintiff from recovering on a negligence claim if it is established that he[,]

---

[3] The evidence did not show that Playa Ventanas, in particular, had an unusually high number of drownings.

[4] The Appellants also contend that the trial court erred in granting Oglethorpe's motion for summary judgment (i) because Oglethorpe owed a duty to exercise ordinary care for the safety of its students in the planning and implementation of its study-abroad program and material issues of fact remain regarding Oglethorpe's negligence, (ii) the exculpatory clause in the release agreement signed by Downes is not enforceable, and (iii) gross negligence cannot be waived by an exculpatory clause and material issues of fact remain as to whether Oglethorpe was grossly negligent.

without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not." (Citation, punctuation, and footnote omitted.) *Vaughn v. Pleasent*, 266 Ga. 862, 864 (1) (471 SE2d 866) (1996).

> A defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks. The knowledge requirement does not refer to a comprehension of general, non-specific risks. Rather, the knowledge that a plaintiff who assumes the risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury.

(Citation and punctuation omitted.) *Gilreath v. Smith*, 340 Ga. App. 265, 268 (1) (797 SE2d 177) (2017). "As a general rule, whether a party assumed the risk of his injury is an issue for the jury that should not be decided by summary judgment unless the defense is conclusively established by plain, palpable and undisputed evidence." (Punctuation and footnote omitted.) *Findley v. Griffin*, 292 Ga. App. 807, 809 (2) (666 SE2d 79) (2008).

It is well established under Georgia law that "[t]he danger of drowning in water is a palpable and manifest peril, the knowledge of which is chargeable to [persons]

in the absence of a showing of want of ordinary capacity." *Bourn v. Herring*, 225 Ga. 67, 69 (2) (166 SE2d 89) (1969). See, e. g., *White v. Ga. Power Co.*, 265 Ga. App. 664, 666 (1) (595 SE2d 353) (2004) (the "[p]erils of deep water are instinctively known"). The record does not show that Downes was aware of the presence of rip currents in the waters off the beach; however, "[i]t is the body of water per se that presents an obvious risk of drowning, not its attendant conditions such as a strong unseen current or a deep unknown hole." Id. at 667. As Downes was a competent adult, he was necessarily aware of the risk of drowning when he voluntarily entered the Pacific ocean.

The Appellants contend that Oglethorpe had a duty to exercise ordinary care in the planning and implementing of its study abroad program to avoid exposing the students to a risk of drowning. Because Oglethorpe owed this duty, they contend, the fact that Downes entered the water voluntarily does not establish as a matter of law that he assumed the risk of drowning. Rather, they contend, Oglethorpe created the dangerous situation by taking Downes to the beach without investigating its dangers, adopting an emergency preparedness plan, ensuring the professors in charge had adequate training and procedures for supervising swimming students, and supplying safety equipment.

Assuming that Oglethorpe, having undertaken a study-abroad program, was under a duty to act with reasonable care, and that there is evidence of record that Oglethorpe failed to do so, assumption of risk is nevertheless a defense to negligence. "Even if a defendant is negligent, a determination that a plaintiff assumed the risk or failed to exercise ordinary care for [his] own safety bars recovery for the resulting injury suffered by the plaintiff, unless the injury was wilfully and wantonly inflicted." (Citations and footnote omitted.) *City of Winder v. Girone*, 265 Ga. 723, 724 (2) (462 SE2d 704) (1995). In *Rice v. Oaks Investors II*, 292 Ga. App. 692, 693-694 (1) (666 SE2d 63) (2008), the defendant was entitled to a directed verdict where, notwithstanding evidence that the defendants were negligent per se in failing to properly enclose the pool in which the 10-year-old decedent drowned, the child's own negligence was the sole proximate cause of her death because the risk of swimming in the pool was obvious as a matter of law. Similarly, notwithstanding whether a defendant breached a duty to care for or supervise a decedent, the decedent's assumption of the risk of injury may bar recovery. See *Sayed v. Azizullah*, 238 Ga. App. 642, 643-644 (519 SE2d 732) (1999) (finding no need to reach the issue of whether a duty was owed by the defendant to care for the 17-year-old decedent because the decedent was charged with appreciating the risk of swimming in the lake

9

as a matter of law, and he voluntarily assumed that risk); *Riley v. Brasunas*, 210 Ga. App. 865, 868 (2) (438 SE2d 113) (1993) (any failure of the defendant to exercise the duty of an ordinary responsible guardian in watching over the seven-year-old child, who was injured using a trampoline, could not be the proximate cause of the child's injuries where the child knowingly exposed himself to the obvious danger). See also *Bourn v. Herring*, 225 Ga. at 69-70 (2) (as the decedent, who was over 14 years old, was chargeable with diligence for his own safety against palpable and manifest peril, plaintiff could not recover against defendants for failure to exercise ordinary care in supervising the decedent in and around the lake in which he drowned).

As Appellants show, a decedent's decision to enter a body of water with awareness of the physical circumstances is not necessarily determinative of whether the decedent assumed the risk of drowning. For example, the breach of a duty to provide statutorily required safety equipment may be "inextricable from the proximate cause of the damage." (Citation and punctuation omitted.) *Holbrook v. Executive Conf. Ctr.*, 219 Ga. App. 104, 107 (2) (464 SE2d 398) (1995) (finding that a jury could that the absence of statutorily mandated safety equipment was the proximate cause of the decedent's drowning in the defendant's pool). See *Alexander v. Harnick*, 142 Ga. App. 816, 817 (2) (237 SE2d 221) (1977) (where the decedent

drowned after she jumped from the defendant's houseboat into the water in an attempt to rescue her dog, and the defendant did not have any throwable life preservers on board, nor readily accessible life vests, as required by law, "a jury would not be precluded from finding that the absence of the safety equipment was the proximate cause of the decedent's death merely because she entered the water voluntarily."). And in premises liability actions, the general rule is "that owners or operators of nonresidential swimming facilities owe an affirmative duty to exercise ordinary and reasonable care for the safety and protection of invitees swimming in the pool." (Citations omitted.) *Walker v. Daniels*, 200 Ga. App. 150, 155 (1) (407 SE2d 70) (1991).

Appellants do not show, however, that Oglethorpe was under a statutory or common law duty to provide safety equipment to its students during an excursion to the beach, or that the ocean is analogous to a nonresidential swimming pool. Nor can we conclude that Oglethorpe became an insurer for the safety of its students by undertaking a study-abroad program, or that it was responsible for the peril encountered by Downes in that it transported him to the beach. Compare *Alexander v. Harnick*, 142 Ga. App. at 817 (3) (an issue of fact remained as to whether, by taking decedent onto the water without the statutorily required safety equipment,

11

defendant helped to create her peril). Because he was a competent adult, Downes would have appreciated the specific risk of drowning posed by entering a body of water so inherently dangerous as the Pacific ocean. As Downes voluntarily did so, Oglethorpe established that he assumed that risk. Although Downes's death was undeniably tragic, we are constrained to conclude that the trial court correctly granted Oglethorpe's motion for summary judgment.

2. The Appellants' other claims of error are moot.

*Judgment affirmed. Andrews and Rickman, JJ., concur*.