308 Ga. 831
FINAL COPY

S19G0499. DALY et al. v. BERRYHILL et al.

PETERSON, Justice.

Shane Berryhill fainted and fell out of an eighteen-foot deer stand while hunting five days after undergoing major heart surgery. Berryhill and his wife (collectively "plaintiffs") sued his surgeon, Dr. Dale Daly, and Savannah Cardiology (collectively "defendants"), claiming Daly's negligent prescribing caused him to faint. The trial court instructed the jury on assumption of risk, and the jury returned a defense verdict. The Court of Appeals reversed and held that the instruction should not have been given. We granted certiorari to consider whether at least slight evidence was presented at trial to warrant the instruction.[1] There was such slight evidence:

---

[1] In granting certiorari, we also asked whether the trial court erred in charging the jury on avoidance of consequences. Addressing that issue on the basis that it was likely to arise on retrial, the Court of Appeals concluded that the trial court did not err by giving that charge. But plaintiffs did not file a cross-petition for certiorari challenging that decision before this Court, and plaintiffs agreed at oral argument, held on November 7, 2019, that the issue of the avoidance of consequences charge was not before this Court. Therefore, we do not address whether the avoidance of consequences charge was proper.

Berryhill knew he had just had major surgery for serious cardiac problems, and evidence — although contradicted — existed to show that he had been instructed not to engage in strenuous activity and not to lift more than ten pounds, bend, or stoop over for at least seven days after his procedure. Even though Berryhill was not informed of the specific risk of fainting, violating such explicit medical instructions immediately after major heart surgery poses an obvious cardiovascular risk to which competent adults cannot blind themselves, and constituted the slight evidence needed here to warrant a jury instruction. We reverse.

The evidence introduced at trial shows that on October 2, 2009, Berryhill went to a local care clinic for chest pain and high blood pressure. The doctor at the clinic asked Berryhill to return the following day, at which point the doctor prescribed Vaseretic, a blood pressure medication, and referred Berryhill to Dr. Daly. On October 14, Dr. Daly performed a nuclear stress test that returned abnormal results and indicated that a large area of Berryhill's heart was receiving low blood flow. Dr. Daly instructed Berryhill to continue

using Vaseretic and prescribed Plavix to prevent blood clotting, Crestor to help with high cholesterol, and Bystolic, an additional blood pressure medication to protect against a heart attack. Dr. Daly did not warn Berryhill of the medications' possible side effects of dizziness or losing consciousness. The following day, Dr. Daly performed a cardiac catheter procedure revealing a 99% blocked artery and also performed a balloon angioplasty with a stent.

After the procedures, Dr. Daly gave post-surgical instructions to Berryhill's wife, including that Berryhill was not to engage in any strenuous or risky activity or any lifting, bending, or stooping over for one week. The doctor also told Berryhill's wife that he should be careful because he was on blood thinners. Dr. Daly later went over the restrictions with Berryhill, telling him he could return to work in a week, but not to engage in any strenuous activity or lift objects weighing more than ten pounds. Before discharge, a cardiac nurse discussed post-stent limitations, and Berryhill verbalized understanding and that he had the proper phone numbers to call with any questions. It is undisputed that instructions of this general

nature were given, but plaintiffs also presented evidence that Berryhill was given conflicting information regarding the length of time he needed to refrain from activity, ranging from one day to one week.

Berryhill was discharged from the hospital one day after the procedures. Five days after the procedures, Berryhill went hunting. He walked 200 yards through rough terrain carrying his rifle (which weighed more than nine pounds), and climbed up an 18-foot deer stand. Upon reaching the top of the stand, Berryhill fainted and fell from the stand, fracturing several vertebrae.

Plaintiffs sued Dr. Daly and Savannah Cardiology,[2] alleging that Dr. Daly prescribed too much blood pressure medication, which caused Berryhill to faint. The trial court gave the following charge on assumption of risk:

> When a person knowingly and voluntarily takes a risk of physical injury, the danger of which is so obvious

---

[2] Dr. Daly worked for Savannah Cardiology, PC, at the time Dr. Daly treated Berryhill. Plaintiffs sued Savannah Cardiology under a theory of respondeat superior. Plaintiffs also included other defendants in their initial complaint, but Dr. Daly and Savannah Cardiology, PC, were the only remaining defendants at the time of trial.

that the act of taking such risk in and of itself amounts to a failure to exercise ordinary care for his own safety, that person cannot hold another liable for injuries proximately caused by such action even though the injuries may be in part attributable to the negligence of the other person. To establish that Plaintiff Shane Berryhill assumed the risk of his injury the Defendants must demonstrate that Mr. Berryhill had a subjective knowledge of a specific particular risk of harm associated with the activity or condition that proximately caused the injury yet proceeded with the activity anyway.

The court gave the charge over plaintiffs' objection, although the charge included, at plaintiffs' request, language additional to that found in the pattern charge.[3] The jury returned a complete defense verdict, and the trial court denied plaintiffs' motion for new trial.

The Court of Appeals reversed, holding that the trial court erred in giving an instruction on assumption of the risk, because the evidence did not justify the instruction. Specifically, the Court of Appeals held "climbing into a deer stand was not a risk associated with Dr. Daly's duty to Berryhill . . . . Rather, the risk of [fainting]

---

[3] The last sentence of the jury instructions excerpted above was added following plaintiffs' objection that the pattern charge did not adequately address the subjective-knowledge requirement of assumption of the risk. Compare Suggested Pattern Jury Instructions, Vol. I: Civil Cases, § 60.130 (5th ed.).

as a side effect of the medication was the particular risk in question." *Berryhill v. Daly*, 348 Ga. App. 221, 223 (1) (822 SE2d 30) (2018). The Court of Appeals explained that the suggestion in the record that Dr. Daly told Berryhill not to engage in strenuous activity did not establish that Berryhill knew that he risked losing consciousness if he chose to disregard the instructions, or that he knew dizziness or loss of consciousness were possible side effects of the blood pressure medication. Id. at 223-224 (1). Defendants appeal this decision, and we reverse.

There need be only slight evidence supporting the theory of the charge to authorize a requested jury instruction. See *Wainwright v. State*, 305 Ga. 63, 70 (5) (823 SE2d 749) (2019). "[T]he evidence supporting the charge does not have to be direct evidence. It is enough if there is something from which a jury could infer a conclusion regarding the subject." *Jones v. Sperau*, 275 Ga. 213, 214 (2) (563 SE2d 863) (2002) (citations and punctuation omitted). For the purposes of this appeal, we need not decide as a matter of law whether Berryhill assumed a risk that led to his injury; we must

decide only whether there was slight evidence to support the jury instruction regarding assumption of the risk. And if there was slight evidence supporting the instruction — and there was — it is irrelevant whether we find that slight evidence persuasive in the face of contrary evidence; that question was reserved exclusively for the jury.

"The affirmative defense of assumption of the risk bars a plaintiff from recovering on a negligence claim if it is established that he[,] without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not." *Vaughn v. Pleasent*, 266 Ga. 862, 864 (1) (471 SE2d 866) (1996) (citation and punctuation omitted). "[A] defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks." *Muldovan v. McEachern,* 271 Ga. 805, 807-808 (2) (523 SE2d 566) (1999). Knowledge of the risk means that the plaintiff has both

actual and subjective knowledge of "the specific, particular risk of harm associated with the activity or condition that proximately causes injury." Id. at 808 (2).

Plaintiffs argue that an assumption of risk instruction was improper given a complete absence of evidence that Berryhill knew of the specific risk of fainting due to his blood pressure medications or engaging in strenuous activity. They rely on cases such as *Vaughn*, wherein we held that an assumption of the risk jury instruction was not warranted when the plaintiff, a police officer who was driving on the wrong side of the road with his siren sounding and lights flashing in response to an emergency, was seriously injured by colliding with a truck that turned left in front of the speeding police car. 266 Ga. at 863-865. The plaintiff officer testified that the traffic appeared to yield to him, and the truck appeared to be stopped, also yielding to him; the truck did not use a turn signal. Id. at 863. The evidence showed that the officer could not have known that the truck was going to turn left until it actually turned, at which point the officer was already travelling on the

wrong side of the road and it was too late to avoid a collision. Id. at 865 (2). We agreed with the plaintiff in that case that the trial court erred in giving an assumption of risk instruction, given a lack of evidence that the officer knew that the truck would fail to yield the right-of-way to him. Id. at 865-866 (2).

But plaintiffs' argument ignores other case law that requires us to consider an objective common sense standard in assessing whether a plaintiff had knowledge of a risk. We have long held that a plaintiff "'who knowingly and voluntarily takes a risk of physical injury[,] the danger of which is so obvious that the act of taking such risk, in and of itself, amounts to a failure to exercise ordinary care and diligence for his own safety, can not hold another liable for damages resulting from a hurt thus occasioned.'" *Southland Butane Gas Co. v. Blackwell*, 211 Ga. 665, 668 (88 SE2d 6) (1955) (quoting *City of Columbus v. Griggs*, 113 Ga. 597 (38 SE 953) (1901)). And some risks are so clear that we impute knowledge of the risk to the plaintiff, so long as the plaintiff is competent. See *Bourn v. Herring*, 225 Ga. 67, 69 (2) (166 SE2d 89) (1969) ("The danger of drowning in

water is a palpable and manifest peril, *the knowledge of which is chargeable to [persons]* in the absence of a showing of want of ordinary capacity." (emphasis supplied)).  For example, in *Landings Association, Inc. v. Williams*, we held that a woman who was attacked by an eight-foot alligator assumed the risk of attack by walking near a lagoon after dark, even though the community in which she was walking advertised a policy of removing aggressive alligators and alligators larger than seven feet. 291 Ga. 397, 399-400 (728 SE2d 577) (2012). We explained that a "reasonable adult who is not disabled understands that small alligators have large parents and are capable of moving from one lagoon to another, and such an adult, therefore, assumes the risk of an alligator attack when, knowing that wild alligators are present in a community, walks near a lagoon in that community after dark." Id. at 400.[4]

---

[4] There may be some tension between the common-sense analysis of *Landings* and the specific-knowledge requirement of *Vaughn*; common sense would seem to suggest that the officer in *Vaughn* must have been aware of the obvious risk of a head-on collision arising from driving over the speed limit in the wrong lane. It may be, as the Court of Appeals has suggested, that *Vaughn* is limited to the emergency vehicle context, in which it is more reasonable for

Similarly, the Court of Appeals deemed a competent 20-year-old university student to be "necessarily aware" of the risk of drowning when he voluntarily entered the ocean, even if he was not aware of the presence of rip currents in the waters off the beach. *Downes v. Oglethorpe University, Inc.*, 342 Ga. App. 250, 254 (1) (802 SE2d 437) (2017) ("[I]t is the body of water per se that presents an obvious risk of drowning, not its attendant conditions such as a strong unseen current or a deep unknown hole." (citation and punctuation omitted)). The presence of a clear or obvious risk necessarily carries with it the risk that the potential negative outcome that makes the behavior risky could arise in any one of a number of specific ways.

Here, there was at least slight evidence that Berryhill was

---

a first responder using his sirens and emergency lights to assume that other drivers will exercise due care to avoid hitting his vehicle as they are legally required to do. See *Teems v. Bates*, 300 Ga. App. 70, 75 (1) n.5 (684 SE2d 662) (2009). But we need not decide the scope of *Vaughn* today. To the extent these two cases are not reconcilable, *Landings* controls as the more recently decided case. See *White v. State*, 305 Ga. 111, 122 (3) n.10 (823 SE2d 794) (2019) ("When a high court finds discordant opinions among its own horizontal precedents . . . the court generally follows its decision in the most *recent* case, which must have tacitly overruled any truly inconsistent holding." (quoting Bryan A. Garner, et al., The Law of Judicial Precedent, 300 (2016) (punctuation omitted; emphasis in original)).

instructed not to engage in strenuous activity and not to lift more than ten pounds, bend, or stoop over for at least seven days after his procedure. Even though Dr. Daly did not explain all of the specific risks that could have resulted from disregarding those instructions, a competent adult like Berryhill cannot blind himself to the obvious risk of a dangerous cardiovascular event that could result in unconsciousness if he disregards explicit physician instructions prohibiting strenuous activity immediately after major heart surgery. There thus was at least slight evidence that Berryhill knew that going hunting and climbing a deer stand only five days after surgery posed a risk of serious physical injury, and that he voluntarily exposed himself to that risk. The trial court did not err in giving the requested jury instruction.

*Judgment reversed. All the Justices concur, except Bethel, Ellington, and McMillian, JJ., disqualified.*

DECIDED JUNE 1, 2020.

Certiorari to the Court of Appeals of Georgia — 348 Ga. App. 221.

*Brennan & Wasden, Wiley A. Wasden III, for appellants.;*

*Savage & Turner, Brent J. Savage, Kathryn H. Pinckney*, for appellees.

*Hawkins Parnell Thackston & Young, Martin A. Levinson; Drew Eckl & Farnham, Garret W. Meader, Hall F. McKinley III, Elissa B. Haynes; Chambless, Higdon, Richardson, Katz & Griggs, David N. Nelson; Ellis Painter Ratterree & Adams, Philip M. Thompson*, amici curiae.