**THIRD DIVISION
DOYLE, P. J.,
REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**February 24, 2022**

# In the Court of Appeals of Georgia

A21A1780. WILLIAMS v. CITY OF TYBEE ISLAND.

DOYLE, Presiding Judge.

This appeal arises from an order granting summary judgment to the City of Tybee Island ("the City") with regard to wrongful death claims filed by Karl and Patrina Williams after their 17-year-old son, Je'Aarian Belin, drowned trying to rescue a friend in distress when both teens were caught in a strong current in the waters off Tybee Island. The Williamses appeal, arguing that the trial court erred by granting the City's motion for summary judgment on the grounds of assumption of the risk, for finding that the rescue doctrine did not apply, for finding that the public duty doctrine did not apply, and for finding that the Recreational Property Act[1] ("RPA") barred liability. For the reasons that follow, we affirm.

---

[1] OCGA § 51-3-20 et seq.

Under OCGA § 9-11-56 (c), summary judgment is warranted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. We review the grant or denial of a motion for summary judgment de novo, and we view the evidence, and the reasonable inferences drawn therefrom, in a light most favorable to the nonmovant.[2]

Viewed in this light, the record shows that on April 21, 2019, Belin, Richard Summers, McKenna Smith, and several other teenagers were visiting a beach at Tybee Island near an area called Back River. Smith, Belin, and Summers walked out to a sandbar off the shore during low tide, which was about waist-deep water for the trio. After they noticed that the tide was coming in, the three tried to get back to shore, but struggled against the current of Back River and the now shoulder-deep water. Prior to their attempt to get back to shore, Jennifer Brinkley, who was also at the beach, saw the teens and called the non-emergency line for the City because she was worried for their safety while they were on the sandbar. While the three struggled in the water, City firefighter/lifeguard, Tudor Negrea, looked on from the shore.

[2] (Punctuation omitted.) *Downes v. Oglethorpe Univ., Inc.*, 342 Ga. App. 250, 250-251 (802 SE2d 437) (2017), quoting *Assaf v. Cincinnati Ins. Co.*, 327 Ga. App. 475, 475-476 (759 SE2d 557) (2014).

According to recordings submitted by the City, Negrea had been instructed to watch from the shore and advise responding lifeguards approaching on watercraft of the teens' location and status.[3]

Eventually, Summers reached the shore and one of the non-swimming teens helped him out of the water, but as Belin reached the shore, it appeared from onlookers that he saw that Smith was being overcome in the water, and he turned back to what appeared to be an attempt to assist her. As he was trying to assist Smith, Belin was swept underwater and drowned. His body was recovered four days later.

In her interview with police officers after the incident, Brinkley expressed her concern that it took so long for the lifeguard to respond and to then get into the water to help get the teens back to safety. It was her opinion that had Negrea entered the water earlier, Belin's death would not have occurred. She also stated that she took at least 50 pictures of the incident, many of which appear in the record. Another individual who was at the beach instructed her niece to call 911 numerous times during the incident; she also stated that she and another man went into the water to try and assist Smith and Belin, and it was not until they attempted to rescue the two

---

[3] Apparently Negrea was deposed for this case, but his deposition was not made a part of the record in the trial court.

3

teens that the lifeguard entered the water. She expressed her frustration to the police about the handling of the situation by the first responders.

The City moved for summary judgment, arguing that Belin assumed the risk of his injuries or alternatively that the City was protected by the RPA. The Williamses responded to the motion, arguing that material questions of fact remained because the question of assumption of the risk was not plain and palpable and that there was a question whether Negrea had negligently attempted rescue, thereby coercing Belin into staying in the water to assist Smith. Attached to the response was the affidavit of Smith, who averred that she saw people on the beach, but she could only yell to Summers and Belin, who were closer to her. She averred that "[a]s [Belin] was nearing the beach, he turned and came out toward" her. Also attached was the expert affidavit of Gerald Dworkins, who averred that as soon as Negrea noticed that Smith was in distress, he should have entered the water to assist her with his flotation device so that Belin could continue safely swimming to shore.

After a hearing on the City's motion for summary judgment, the trial court granted the City's motion, finding that Belin assumed the risk of his injuries, the rescue doctrine exception did not apply to create a material question of fact to

4

overcome Belin's assumption of the risk, the public duty doctrine did not apply to the case, and the City was protected from liability by the RPA.

1. The Williamses now appeal, first arguing that the trial court erred by finding that Belin assumed the risk of drowning by going into the ocean at the beach.

> The affirmative defense of assumption of the risk bars a plaintiff from recovering on a negligence claim if it is established that he, without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not. A defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks. Knowledge of the risk means that the plaintiff has both actual and subjective knowledge of the specific, particular risk of harm associated with the activity or condition that proximately causes injury.[4]

"It is well established under Georgia law that the danger of drowning in water is a palpable and manifest peril, the knowledge of which is chargeable to persons in the

---

[4] (Citations and punctuation omitted.) *Daly v. Berryhill*, 308 Ga. 831, 834 (843 SE2d 870) (2020), quoting *Muldovan v. McEachern*, 271 Ga. 805, 807-808 (2) (523 SE2d 566) (1999); *Vaughn v. Pleasent*, 266 Ga. 862, 864 (1) (471 SE2d 866) (1996).

absence of a showing of want of ordinary capacity."[5] This is so regardless of the area's "attendant conditions such as a strong unseen current or a deep unknown hole."[6]

Here, it is clear that had Belin drowned while out on the sandbar or on his way in, the Williamses' claims would have been barred by Belin's assumption of the risk.[7] Citing *Bass Custom Landscapes, Inc. v. Cunard*,[8] the Williamses contend that Belin did not assume the risk voluntarily and that he was coerced to attempt to return to Smith because Negrea failed to enter the water to attempt a rescue or because the City

---

[5] (Punctuation omitted.) *Downes*, 342 Ga. App. at 254 (1), quoting *Bourn v. Herring*, 225 Ga. 67, 69 (2) (166 SE2d 89) (1969).

[6] *Downes* 342 Ga. App. at 254 (1), quoting *White v. Ga. Power Co.*, 265 Ga. App. 664, 666 (1) (595 SE2d 353) (2004).

[7] See *Downes* 342 Ga. App. at 254-256 (1). See also *Rice v. Oak Investors II*, 292 Ga. App. 692, 693-694 (1) (666 SE2d 63) (2008) (holding that 10-year-old assumed the risk of drowning and no question of fact existed as to defendants' negligence despite code violations related to the swimming pool in which the decedent drowned); *Spooner v. City of Camilla*, 256 Ga. App. 179, 181-182 (2) (a) (568 SE2d 109) (2002) (holding that even young children can be held to have assumed the risk of downing); *Sayed v. Azizullah*, 238 Ga. App. 642, 643-644 (519 SE2d 732) (1999) (17-year-old assumed the risk of drowning when swimming in a lake).

[8] 258 Ga. App. 617, 619-621 (1) (575 SE2d 17) (2002).

6

was otherwise negligent in posting warnings or having sufficient rescuers in the known hazardous area.

We disagree that any failure to rescue by Negrea or others constituted coercion such that Belin's actions were not voluntary undertakings. In *Bass*, the plaintiff was ordered by her superior at her job to assist another person in an icy parking lot, which resulted in the plaintiff sustaining injuries to herself in attempting to assist the individual.[9] This Court determined that questions of fact remained as to whether the plaintiff had been coerced into her act or whether she assumed the risk.[10] Here, based on the photographs contained in the record, Negrea was not close enough to stop Belin from going back for Smith and to instead make him come to shore. Certainly, had Negrea entered the water then he would have had two individuals to attempt to keep afloat and out of the rapid current until the jet ski rescuers arrived. This evidence is simply too speculative — whether based on the photographs, eyewitness testimony, or expert affidavit — to constitute a question of fact for the jury.[11] And

[9] See id. at 618.

[10] See id. at 621 (1).

[11] See, e.g., *Forest Cove Apartments v. Wilson*, 333 Ga. App. 731, 737 (776 SE2d 664) (2015) ("[G]uesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on

Belin's "decision to risk traversing a known hazard to follow h[is] conscience does not amount to coercion."[12]

Moreover, the Williamses' argument that the rescue doctrine somehow results in liability for the City is of no moment. "In order to hold a defendant liable for the death of a rescuer, however, a plaintiff must show that the defendant's negligence placed himself or another person in imminent distress, thereby requiring the rescue and making injury to the rescuer a foreseeable possibility."[13] Just as Belin was aware of the risk of danger of entering the ocean, so too was Smith, and any negligence of Smith's in also being stuck in the current and finding herself in danger does not amount to a negligent act on the part of the City. Neither the City nor Negrea caused any of the teens to be in the water.[14] Thus, the trial court did not err in granting the City's motion for summary judgment.

---

summary judgment.") (punctuation omitted).

[12] *Naval Store Suppliers, Inc. v. Croft*, 346 Ga. App. 773, 775 (1) (816 SE2d 301) (2018).

[13] *Brazier v. Phoenix Group Mgmt.*, 280 Ga. App. 67, 72 (1) (b) (633 SE2d 354) (2006).

[14] See id. (holding that property owner was not liable for death of rescuer as a matter of law because the risk of drowning was open and obvious both to the individual who needed to be rescued and to the rescuer).

2. The Williamses also argue that the public duty doctrine should not shield the City from liability.

> Under the "public duty doctrine," a municipality's duty to protect the general public cannot be the basis for recovering for injuries sustained from a failure to provide police protection to an individual. [If] there is a special relationship between the individual and the municipality which sets the individual apart from the general public and engenders a special duty owed to that individual, however, the municipality may be subject to liability for the nonfeasance of its police department.[15]

Assuming without deciding that this doctrine applies in this case, there is no evidence of a special relationship between Belin and the lifeguards/firefighters who responded to the teens' distress that day. Accordingly, this argument does not require reversal.

3. Based on our holding in Division 1, we need not address arguments related to the RPA.

*Judgment affirmed. Reese and Brown, JJ., concur.*

---

[15] (Citations and punctuation omitted.) *SecureAlert Inc. v. Boggs*, 345 Ga. App. 812, 816-817 (815 SE2d 156) (2018), quoting *Stevenson v. City of Doraville*, 294 Ga. 220, 222 (1) (751 SE2d 845) (2013).

9