**FIRST DIVISION**
**BARNES, P. J.,**
**LAND and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.** **https://www.gaappeals.us/rules**

**November 1, 2023**

# In the Court of Appeals of Georgia

A23A0878. KNIGHT v. SENOIA RACEWAY MANAGEMENT, INC.

WATKINS, Judge.

Angela Knight, as parent of Khalan Knight (collectively, "Knight"), appeals from the trial court's grant of summary judgement in favor of Senoia Raceway Management, Inc. (the "Raceway"). Knight argues that the trial court erred in: (1) finding that Knight assumed the risk of his injuries; (2) construing Knight's testimony; (3) denying his motion for spoliation; and (4) rejecting his claim of negligence per se. For the reasons set forth below, we affirm.

> The appellate court's review of the grant or denial of summary judgment is de novo, and the appellate court views the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. Summary judgment is warranted only where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.[1]

---

[1] *Fulton-DeKalb Hosp. Auth. v. Hickson*, 351 Ga. App. 221, 223 (830 SE2d 582) (2019).

So viewed, the record shows the following. The Raceway operated an oval short racetrack with a clay surface. The injuries in the case resulted from a "waterless boat race" at the Raceway. In a waterless boat race, participants drive around the track while pulling a boat attached to the rear of their vehicle. The drivers attempt to dislodge the boats of their competitors — primarily through ramming the boats — and the last driver with a boat still attached is the winner. Only a very small portion of the boat needs to remain attached for a driver to win. Once a driver's boat is dislodged, the driver is supposed to exit the race. Other rules for the race included wearing a seat belt and helmet, no purposeful T-boning — that is, hitting another vehicle in the door — and not getting out of the car on the racetrack.

In August 2018, Knight and his friend, Ryan Gause, went to the Raceway. Knight was almost 17 years old at the time. Gause testified that he and Knight purchased a ticket and wristband that would allow them to go into the pit at the Raceway. Knight, however, recalled purchasing the cheapest ticket at the gate. Typically, the Raceway required spectators to sign a waiver before purchasing the ticket that allowed access to the pit. The Raceway manned entrances to the pit to ensure that only people with the proper wristband could enter. While one Raceway employee testified that it was not possible to circumvent the manned gates to enter the pit, another employee testified it could be

2

difficult for Raceway employees to check every wristband if a spectator entered with a large group.

Knight did not sign a waiver when he bought his ticket. Knight testified that he was talking to a teenaged driver through a fence when the driver invited him to join the race. Knight did not previously know the driver, but Knight and his friends agreed, and the driver opened a gate in the fence. The gate was already halfway open, and the driver opened it further so they could get through. Knight and his friends watched the day's races from the pit area. When Knight left the pit to visit the concession stand, the driver would wait at the gate and reopen it so Knight could come back through. When it was time for the race to begin — the last race of the day — Knight entered the driver's vehicle.

Andrew Holloway, who was seventeen years old at the time, was the driver of the vehicle Knight entered. Holloway testified, however, that Knight only entered his vehicle because the vehicle Knight originally entered was too full. Knight, for his part, testified that he did not switch cars before entering Holloway's vehicle. Holloway also did not know how Knight entered the pit area.

Prior to the race, a Raceway employee went over the rules with the drivers and passengers. According to Knight, those rules were to only hit the boats, to leave the

3

raceway after the boat was knocked off, and to wear a helmet. As the race began, Holloway drove around the track with Knight as his passenger. Drivers attempted to knock the boats off of other vehicles. Knight saw cars making contact with other cars. After witnessing the car-to-car contact, he did not feel at risk enough to ask Holloway to exit the race.

During the race, Holloway knocked the boat off of Dylan Knowles's vehicle. Holloway's vehicle then stalled. Knowles, now boat-less, continued to race around the track and struck the passenger side of Holloway's vehicle, where Knight was sitting. Knowles testified that he thought he still had a piece of boat left so he continued racing. Knowles testified that he hit a boat off another vehicle, and then ricocheted and hit Holloway's stalled car. Knowles claimed that he did not see Holloway's vehicle before he hit it. Knight contended in his lawsuit that the Raceway should have stopped the race once his vehicle stalled and the Raceway should have removed Knowles from the race after he lost his boat.

Knight was transported to a hospital via an air ambulance. He suffered injuries as a result of the collision, including injuries to his head, neck, shoulder, and lower back. He also developed anxiety and as a result dropped out of high school.

Knight filed a complaint against the Raceway and other parties, asserting in his amended complaint claims against the Raceway of premises liability, negligence, vicarious liability, negligent training and supervision, and attractive nuisance. The Raceway filed a motion for summary judgment, which the trial court granted. This appeal followed.

1. Knight argues that the trial court erred in finding that he assumed the risk for his injuries. He contends that he entered the race for fun and did not consider any risk. He also argues that he could not have anticipated the lack of rule enforcement on the part of the Raceway.

> A defendant asserting an assumption of the risk defense must establish that the plaintiff (i) had knowledge of the danger; (ii) understood and appreciated the risks associated with such danger; and (iii) voluntarily exposed himself to those risks. The knowledge requirement does not refer to a comprehension of general, non-specific risks. Rather, the knowledge that a plaintiff who assumes the risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury.[2]

---

[2] (Citation and punctuation omitted.) *Downes v. Oglethorpe Univ., Inc.*, 342 Ga. App. 250, 253 (1) (802 SE2d 437) (2017).

While assumption of risk is usually a question for the jury, the trial court may grant summary judgment on this issue if "the defense is conclusively established by plain, palpable and undisputed evidence."[3]

Here, we agree with the trial court that Knight assumed the risk for his injuries. The waterless boat race involved racing around a track while attempting to ram boats attached to other vehicles. "One who takes part in such a sport accepts the dangers that inhere in it so far as they are obvious and necessary[.]"[4] The danger of a car striking another vehicle rather than the attached boat, due to poor aim or otherwise, was an inherent and obvious danger of the race.[5]

Moreover, the record showed that Knight was aware of such a danger. Knight had previously watched car races on television where collisions had occurred. He also understood the goal of the race was to knock off the other racers' boats. Knight knew that he needed a helmet to join the race, and originally was not going to participate

---

[3] (Citation and punctuation omitted.) Id. at 253 (1).

[4] (Punctuation omitted.) *Atlanta Funtown v. Crouch*, 114 Ga. App. 702, 717 (152 SE2d 583) (1966) (holding that the plaintiff assumed the risk for an amusement park ride).

[5] See *Teems v. Bates*, 300 Ga. App. 70, 75 (1) (684 SE2d 662) (2009) ("[A] passenger or driver of a motor vehicle assumes the risk of hazards associated with car racing, including the risk that one of the drivers will drive recklessly, lose control on a curve, and swerve into another lane.").

because he did not have a helmet, but decided to join once he received one from the driver. During the race itself, Knight observed cars hitting other vehicles, and he did not tell the driver to pull out of the race.[6]

While we are sympathetic to Knight's injuries, the danger of being hit by another vehicle was inherent and obvious, and the evidence showed that Knight was aware of such a danger. Accordingly, the trial court did not err in granting summary judgment to the Raceway on assumption of risk.[7]

2. Knight argues that the trial court erred in relying on alleged inconsistent party statements and repeated questioning in finding that he had subjective knowledge of the

---

[6] See *Roberts v. King*, 102 Ga. App. 518, 522 (116 SE2d 885) (1960) (holding that the minor plaintiff assumed the risks from an "all-out" race even if he only anticipated a shorter drag race, particularly because the plaintiff never sought assurances that the race would only be a drag race and never "made any effort to cause the driver to desist or permit him to get out of the automobile").

[7] See *Sutton v. Sumner*, 224 Ga. App. 857, 859 (482 SE2d 486) (1997) (holding that the plaintiff "knew about and assumed the risk of injury from the normal, ordinary dangers inherent in watching a race from the unprotected pit area"); *Daves v. Shepherd Spinal Ctr.*, 219 Ga. App. 835, 836 (1) (466 SE2d 692) (1996) (holding that the plaintiff assumed the risk of collision as a spectator to a wheelchair race because she chose to watch the race from the bottom of a hill, knew that racers sometimes lost control of their wheelchairs, and stood only three or four feet from the race course); see also *Dalton v. Jones*, 260 Ga. App. 791, 792 (1) (581 SE2d 360) (2003) (holding that a spectator who buys a ticket to a baseball game in a seat which the plaintiff can readily determine is unprotected assumes the risk of being hit by errant baseballs).

risk of injury. He contends that, during his deposition, he testified at least seven times that he did not think the race was dangerous, while only testifying two times that he understood there could be a danger.

"[A] trial court faced with a party's self-contradictory sworn testimony must construe the testimony against that party on a motion for summary judgment, unless he or she offers a reasonable explanation for the contradiction."[8] Knight contends that we should remand in order for the trial court to make an express determination as to whether this principle applies.[9] The trial court, however, did not rely on inconsistent party statements in its order. Nor does Knight's brief identify the seven instances where he allegedly stated that the race was not dangerous. Based on our review of the record, there was only one instance where Knight was at best equivocal: in response to whether he thought the boat race could be dangerous, he answered, "Yes. But, no at the same time. . . . [I]t's [ ] both." And while Knight did testify that he thought the race would be "fun[,]" that is not contradictory as to whether he appreciated the dangers of the race. Accordingly, this claim of error is without merit.

---

[8] *Bithoney v. Fulton-Dekalb Hosp. Auth.*, 313 Ga. App. 335, 342 (1) (721 SE2d 577) (2011).

[9] See, e.g., *Sikes v. Great Lakes Reinsurance (UK) PLC*, 321 Ga. App. 136, 139 (741 SE2d 263) (2013) (remanding to the trial court in order for the court to make this determination).

3. Knight argues that the trial court erred in denying his motion for spoliation. During discovery, Knight sought waivers from the spectators in the pit in order to show that the Raceway did not routinely collect those waivers. Specifically, Knight sought waivers from six non-parties who were in the pit that day and testified for Knight. The Raceway provided more than 100 pages of waivers from the date of the collision, but apparently not for the six individuals. The court denied the motion for spoliation, finding that there was no prejudice and no evidence of bad faith because the waivers of the six non-parties were not relevant to Knight's claims.

"[A] trial court has wide discretion in adjudicating spoliation issues, and such discretion will not be disturbed absent abuse."[10]

> Once a trial court has determined that spoliation has occurred, the court should weigh the following five factors when deciding the appropriate penalty: (1) whether the party seeking sanctions was prejudiced as a result of the destroyed evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the destroying party acted in good or bad faith; and (5) the potential for abuse if any expert testimony about the destroyed evidence was not excluded.[11]

---

[10] *Phillips v. Harmon*, 297 Ga. 386, 397 (774 SE2d 596) (2015).

[11] (Citation and punctuation omitted.) *MARTA v. Tyler*, 360 Ga. App. 710, 712 (1) (860 SE2d 224) (2021).

We agree with the trial court that, even assuming spoliation, no sanction was warranted in this case. The existence or absence of waivers from non-parties had no bearing on whether Knight assumed the risk of the race. Moreover, Knight sought to show that the Raceway did not routinely collect waivers, and the Raceway's inability to produce waivers from these non-parties helped him in making this showing. Finally, Knight testified that he entered through a gate in the fence after a driver opened the gate — not through a pit entrance manned by the Raceway. For these reasons, the trial court did not abuse its discretion in denying the motion for spoliation.[12]

4. Knight argues, apparently asserting a claim of negligence per se, that the trial court erred in applying raceway safety statutes to the case. The trial court found that the statutes at issue were not intended to protect passengers like Knight.

"A plaintiff asserting a negligence per se claim must (1) fall within the class of persons the statute was intended to protect and (2) show the harm complained of was the harm the statute was intended to guard against."[13]

---

[12] See *Wilson v. Mountain Valley Community Bank*, 328 Ga. App. 650, 653 (2) (759 SE2d 921) (2014).

[13] (Citation and punctuation omitted.) *Eastside Recovery, LLC v. Calhoun*, 368 Ga. App. 385, 388 (1) (890 SE2d 135) (2023).

10

Knight alleges that the Raceway violated OCGA §§ 43-25-7 through 43-25-10. These statutes allow the Safety Fire Commissioner to promulgate rules and regulations "to prevent injury and loss of life *to spectators* while they are observing and viewing motor vehicles engaged in contests of speed or endurance."[14] The regulations provide that they are the "minimum requirements meant to provide reasonable safety to spectators during racing events *and do not necessarily include requirements to protect participants and management of the racing activities*."[15] The statute allows the commissioner to promulgate rules with respect to

> certificates of occupancy; periodic inspections by fire inspectors and other experts; corrections of deficiencies in racetrack facilities; standards for grandstands; guardrails; spectator areas; nonspectator areas; flagmen; track surfaces; fences; ambulance service; access highways or roads; fire extinguishers and other fire suppression equipment and personnel; plans for fire evacuation; accident reporting; damage reporting; storage of flammable and combustible liquids; restricted areas; concession areas; and such other areas of coverage as, in the opinion of the Safety Fire Commissioner, are deemed necessary.[16]

---

[14] (Emphasis supplied.) OCGA § 43-25-8.

[15] (Emphasis supplied.) Ga. Comp. R. & Regs. r. 120-3-18-.01 (1).

[16] OCGA § 43-25-8.

11

We agree with the trial court that, as a passenger of a vehicle in the race, Knight was not in the class of persons the statute was intended to protect — that is, spectators. We also agree with the trial court that Knight has failed to demonstrate how the harm he experienced was related to the harm the statute was intended to guard against. Knight contends that the Raceway violated these regulations by failing to become licensed and failing to report injuries, but he does not explain how these alleged violations would guard against harm to passengers in the race. Accordingly, we affirm the trial court's grant of summary judgment in favor of the Raceway on Knight's negligence per se claim.[17]

*Judgment affirmed. Land, J., concurs. Barnes, P. J., concurs in judgment only.*

---

[17] See *Eastside Recovery*, 368 Ga. App. at 388-389 (1).