**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**November 12, 2015**

# In the Court of Appeals of Georgia

A15A1151. ESPOSITO v. PHARR COURT ASSOCIATES, L.P.

ANDREWS, Presiding Judge.

After suffering a fall while visiting her husband who was a resident at a nursing home operated by Pharr Court Associates, L.P., d/b/a Nurse Care of Buckhead ("Pharr Court"), Barbara Esposito commenced this action against Pharr Court asserting negligence claims. The trial court granted summary judgment for Pharr Court, concluding Esposito was a licensee when she entered the nursing home and Pharr Court did not breach the duty it owed her in that capacity. On appeal, Esposito contends the trial court erred in determining she was a licensee rather than an invitee, and that issues of material fact exist as to whether Pharr Court breached its duty to her as either an invitee or licensee.

"We apply a de novo standard of review to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (Citation and punctuation omitted.) *Bonner v. Southern Restaurant Group*, 271 Ga. App. 497 (610 SE2d 129) (2005). So viewed, the record shows that on the afternoon of July 25, 2011, Esposito arrived at the Nurse Care of Buckhead facility to visit her husband, who had resided there for approximately a year but was going to be discharged the following day. Esposito testified that she visited her husband at the nursing home every day for seven to eight hours and did "everything with him," accompanying him to eat and assisting with his grooming and care. After entering the facility on the date in question, Esposito walked toward an elevator located across the entrance lobby to the right. The reception desk was situated to Esposito's right as she walked in and across the lobby to the elevator. Just before pushing the button for the elevator, Esposito remembered that her husband might be in physical therapy, so she stepped over to the left to look through the doors of the physical therapy room, which was down a hallway to the left of the elevator. As she moved to the left, her feet slid out from under her and up in the air and she came crashing down on her left side and hit her right elbow.

2

After landing on the floor, Esposito realized she had fallen in diarrhea. Esposito testified that there was a large puddle of diarrhea on the floor where she fell and that when she was on the ground she noticed another smaller puddle in front of the elevator on the other side of the hallway leading to the physical therapy room. Esposito also testified that she was told later that there was also some diarrhea in the elevator she had been planning to take.

Esposito did not know how long the diarrhea had been there and she noticed no footprints around it. Esposito did not see any residents before she fell, but she stated that afterwards, three residents, who were in wheelchairs, came to her assistance. Esposito did not see any nursing home employees from the time she walked into the building until the time she fell. She stated that she did not recall seeing anyone sitting in the reception desk on the day of the incident. After she fell, two staff members came to her aid and helped her into a wheelchair.

Dynasty Gates was the receptionist at Nurse Care of Buckhead on the afternoon of July 25, 2011 and witnessed Esposito fall. Gates testified that she could see the entire lobby from her desk and that is the nursing home's policy that someone should always be at the front desk. Gates testified that she saw Esposito get off the elevator, turn like she was going toward the physical therapy room, and then slip and fall on

3

her right side. When Gates saw Esposito fall, she called "stat" over the intercom to alert other staff members that an accident had occurred. Gates realized something had been on the floor only after someone placed the cup Esposito had been carrying on her desk and she noticed the odor. While other staff members were standing around Esposito to assist her, Gates walked up and then saw the diarrhea. Gates testified that the diarrhea was "camouflaged" by the floor, which was light tan and brown. Gates stated she could not specify the size of the puddle because she did not stay long to look but also stated that it was not bigger than the size of a normal piece of paper.

Gates recounted that approximately one or two minutes before she saw Esposito get off the elevator and fall, one the residents had come downstairs on the elevator. That resident liked to sit in the physical therapy hallway and went to sit there after she got off the elevator. The resident was in a wheelchair and wore a diaper. Gates did not notice any smell in the intervening minutes before Esposito fell. Gates stated that her job responsibilities included making sure the lobby area was clean. If anything was on the floor, she would put up wet floor signs if necessary and either clean it up herself or call a floor tech to do it. Gates stated that she got up about every five minutes because she was always helping residents get on and off the elevators.

Temeka Johnson, the assistant administrator at Nurse Care of Buckhead, was one of the staff members who responded to help Esposito after the fall. Johnson's office was located on a hallway off the right side of the lobby from the entrance. As soon as Johnson walked out of her office, she could see the brown substance in which Esposito had fallen, and she testified that the substance was easy to see. Johnson stated that the puddle was bigger than a sheet of paper but smaller than four by six feet and that she did not recall seeing diarrhea in any area other than where Esposito fell. An engineer retained by Esposito measured the distance between the approximate location of the diarrhea and the area where the receptionist would have been seated as approximately 15 to 18 feet, and the distance to Johnson's office as approximately 40 feet.

Karen Joseph, the Director of Nursing at Nurse Care of Buckhead, testified that staff were trained that visitors were their customers and received instruction on proper etiquette with visitors. Joseph acknowledged Esposito was very involved in her husband's care.

1. OCGA § 51-3-2 (a) defines a licensee as a person who: "(1) Is neither a customer, a servant, nor a trespasser; (2) Does not stand in any contractual relation with the owner of the premises; and (3) Is permitted, expressly or impliedly, to go on

5

the premises merely for his own interests, convenience, or gratification." In granting summary judgment for the defendant, the trial court found (1) that Esposito was on the subject property only for her own interest and convenience and therefore was a licensee to whom Pharr Court only owed a duty not to wilfully or wantonly injure her, and (2) that there was no evidence Pharr Court knowingly exposed Esposito to the peril or wilfully caused her injury. *Ellis v. Hadnott,* 282 Ga. App. 584 (639 SE2d 559) (2006).

> The mutuality of interest required to make one an invitee upon the premises of another does not mean that there must be a commercial business transaction between the parties. It is sufficient to show that each party is moved by a lawful purpose or interest in the object and subject matter of the invitation. The visitor is an invitee if the enterprise is mutual, each lawfully interested therein or there being a common interest or mutual advantage involved. A monetary consideration is not essential.

*Candler Gen. Hosp. v. Purvis,* 123 Ga. App. 334, 336 (2) (181 SE2d 77) (1971). In the instant case, where Esposito provided much of the daily care for her husband, which obviously lightened the burden of the nursing home staff, and where Pharr Court's own director of nursing considered visitors to be customers, we find there

6

was an issue of fact created as to Esposito's status as licensee or invitee. See also, *Jones v. Monroe Nursing Home,* 149 Ga. App. 582 (254 SE2d 902) (1979).

2. A landowner or occupier of premises owes a duty to licensees only to avoid wilfully or wantonly injuring them. OCGA § 51-3-2. "This statutory liability for wilful or wanton injury to licensees means that '[t]he landowner or occupier of the premises owes a duty to a licensee only to avoid knowingly letting him run upon a hidden peril or wilfully causing him harm.'" (Citation omitted.) *Ellis v. Hadnott,* supra at 585. There was no evidence of a breach of that duty at all in the instant case.

In order to recover for injuries sustained in a slip and fall action, an invitee must prove that the premises owner had actual or constructive knowledge of the hazard, and that the plaintiff lacked knowledge of it. *Hayward v. Kroger Co.,* 317 Ga. App. 795 (733 SE2d 7) (2012).

> Constructive knowledge may be shown in two ways: by showing that an employee of the defendant was in the immediate vicinity of the fall and had an opportunity to correct the hazardous condition before the fall; or by showing that the substance had been on the floor for a sufficient length of time that it would have been discovered and removed had the proprietor exercised reasonable care in inspecting the premises.

7

(Citations omitted.) *Bolton v. Wal-Mart Stores*, 257 Ga. App. 198 (570 SE2d 643) (2002).

"Showing that an employee was in the vicinity of a foreign substance is not sufficient to preclude summary judgment. It must be shown that the employee was in a position to have easily seen the substance and removed it." (Citations omitted.) Id. at 198.

In the instant case, the evidence is undisputed that the appellee's receptionist was seated behind her desk approximately 15 to 18 feet away from where Esposito fell, but that she had not seen the substance on the floor until she got up from her desk after the fall. The receptionist also indicated the nursing home's administrator frequently emphasized the necessity of keeping the lobby area clean and free of hazards, and of placing warning signs when needed, and to that end she usually got up from her desk and looked around about every five minutes. On the day of the incident, the diarrhea apparently leaked from the diaper of a resident who exited the elevator only a minute or two before Esposito traversed the same area.

Under these circumstances, there was no showing the appellee had knowledge of the substance on the floor, or that it had time to discover the substance even with the frequent lobby inspections conducted by the receptionist. For the above reasons,

8

regardless of whether Esposito was a licensee or an invitee, the trial court's grant of summary judgment for the appellee was proper.

*Judgment affirmed. Miller and Branch, JJ., concur.*