311 Ga. 170
FINAL COPY

S20G0601. CHAM et al. v. ECI MANAGEMENT CORPORATION et al.

WARREN, Justice.

In this wrongful death action, the surviving spouse of Franklin Callens and the administrator of his estate (collectively, "Plaintiffs") sued the owner and manager of an apartment complex (collectively, "Defendants") where Callens was killed during an armed robbery.[1] Plaintiffs alleged that Defendants were negligent in failing adequately to secure their premises from criminal activity. Defendants prevailed at trial, and Plaintiffs appealed, contending, in relevant part, that the trial court erred in giving a jury instruction on the law applicable to "licensees" in premises liability cases. The

---

[1] Bintou Cham is the surviving spouse of Callens, and Aeysha Harris is the administrator of his estate. At the time of the incident, the apartment complex was owned by Cobb Six-Flags Associates, Ltd., and managed by ECI Management Corporation.

Court of Appeals affirmed the trial court's decision on that issue. We granted certiorari on the following question:

> Did the trial court err in charging on the duty a landowner owes a licensee, when there was evidence showing that the plaintiffs' decedent was a guest of a lawful tenant of the landowner?

For the reasons that follow, we conclude that the answer is "no" and therefore affirm.

1. *Background.*

In December 2015, Callens was shot and killed during an armed robbery in a parking lot of the Concepts 21 Six-Flags apartment complex that was owned and managed by Defendants. It is undisputed that the parking lot was a common area of the apartment complex. At the time of his death, Callens was separated from his spouse and was staying in a three-bedroom apartment in the complex with his girlfriend, Asia Jones. At trial, Jones testified that she and Callens began living together in July 2014 and that she leased the apartment at issue in September 2014. Before signing the lease, Jones testified, she had asked the assistant manager if it

2

would be "okay" for Callens to live with her, and the assistant manager said that it was "perfectly fine," as long as Jones paid "the amount for the rent, whatever that is, like double the rent or whatever."[2] Jones further testified that she talked to the assistant manager "[m]ultiple times" about Callens living in the apartment and that she told the assistant manager that she would like Callens to be present at lease signing and during the apartment tour to "make sure he liked it before I leased it." And, Jones testified, Callens was present with her at the time she signed the lease.

Other evidence, however, suggested that Callens was not authorized to reside on the property. Jones acknowledged that she did not put Callens's name on the rental application that asked the applicant to list the "Name and Relationship of All Other Persons to Occupy Apartment"; instead, Jones marked that space "N/A." And the rental agreement that Jones signed — first in September 2014

---

[2] Aside from this statement by Jones, there does not appear to be any evidence that Jones actually paid higher rent as a result of Callens living with her. Indeed, the testimony of a former manager indicates that a tenant would not be charged more for having additional authorized adults living in the tenant's apartment.

and then again as part of a renewal in October 2015 — stated that the apartment "shall be used for Residential purposes only and shall be occupied only by persons named in Resident's application to rent." Similarly, a former property manager testified that the management had a policy that every adult who resides in a rented apartment should be listed on the lease. The purpose of this policy, the manager explained, was to allow the management to obtain a credit report and criminal background check on all adult occupants of the property.

During the charge conference, Defendants requested that the trial court give the jury the pattern charges on the duty of care owed to invitees, licensees, and trespassers in premises liability cases. Plaintiffs opposed the licensee charge, arguing that, based on the evidence presented, Callens was either an invitee or a trespasser, depending on whether the jury believed Jones that Defendants gave Callens permission to live in the apartment. As a result, Plaintiffs contended, "it is appropriate under the facts of this case to charge [the jurors] on invitee and on trespasser, but not as to licensee."

4

The trial court ruled in Defendants' favor and included the following pattern charge on licensees as part of its jury instructions:

> The licensee is a person who, one, is not a customer, employee, or trespasser; two, does not stand in any contractual relation with the owner of the premises; and three, is permitted expressly or impliedly, to go on the premises merely for his or her own interests, convenience or gratification.
>
> The general test as to whether a person is an invitee or a licensee is whether the injured person at the time of the injury had business relations with the owner of the premises that would cause his or her presence to be beneficial to both. In the absence of some relationship with the owner or occupier of the premises, no invitation may be implied, and the injured person must be regarded as a licensee.
>
> A licensee enters on the premises at his or her own risk, and the owner owes the licensee no duty as to the conditions of the premises, except that the owner should not knowingly let the licensee run into a hidden peril or willfully or wantonly cause him or her injury.

The jury returned a verdict in favor of Defendants, and the trial court entered a judgment on the verdict. Plaintiffs appealed to the Court of Appeals, arguing (among other things) that the trial court erred in instructing the jury on the definition of and duty owed to a licensee.

The Court of Appeals reversed the trial court's judgment on two issues for which we did not grant certiorari review, and it remanded the case (with directions) for a new trial. See *Cham v. ECI Mgmt. Corp.*, 353 Ga. App. 162 (836 SE2d 555) (2019).[3] On the jury charge issue, however, the Court of Appeals affirmed, holding that the trial court did not err in charging the jury on the duty owed to a licensee. Specifically, the Court of Appeals reasoned that

> even if Callens was living in the apartment without Defendants' permission and in violation of the lease, Callens could still be considered a social guest of Jones, the authorized tenant[,] and therefore permitted on the premises by the tenant for his "own interests, convenience, or gratification" and without any contractual relation to Jones or Defendants.

Id. at 165-166. To support its reasoning, the Court of Appeals cited the general principle that social guests are deemed to be licensees, rather than invitees. See id. at 166; *Brown v. Dickerson,* 350 Ga.

---

[3] Specifically, the Court of Appeals held that the trial court committed reversible error when it instructed the jury on the assumption of risk, and that the trial court applied an erroneous evidentiary standard in excluding evidence of the Defendants' security expenditures. See *Cham*, 353 Ga. App. at 168, 172. Because this Court did not grant certiorari to review those issues, we express no opinion about them.

App. 137, 138 (828 SE2d 376) (2019) ("[Plaintiff] undisputedly was a social guest on [landowner]'s property and thus was a licensee."); *Thompson v. Oursler*, 318 Ga. App. 377, 378 (733 SE2d 359) (2012) (in evaluating landowner's liability, noting that "Georgia has adopted the rule that a social guest is not an invitee but is a licensee") (citation and punctuation omitted). See also *Brown v. Clay*, 166 Ga. App. 694, 695 (305 SE2d 367) (1983). We granted certiorari to review the licensee charge the trial court gave the jury.

2. *Applicable Law.*

To authorize a jury instruction, "[t]here need be only slight evidence supporting the theory of the charge." *Daly v. Berryhill*, 308 Ga. 831, 833 (843 SE2d 870) (2020). And "[t]he evidence supporting the charge does not have to be direct evidence. It is enough if there is something from which a jury could infer a conclusion regarding the subject." Id. at 833-834 (citation and punctuation omitted). See also *Jones v. Sperau*, 275 Ga. 213, 213 (563 SE2d 863) (2002) ("If there is even slight evidence on a specific issue, it is not error for the court to charge the jury on the law related to that issue.") (citation

7

and punctuation omitted). Here, we must decide whether there was at least "slight evidence" that Callens was a licensee, as opposed to an invitee or a trespasser, so as to warrant the jury instruction given at trial. See *Daly*, 308 Ga. at 833. To answer that question, we first examine the premises liability law applicable to this case.

(a)    *Background Principles of Landowner and Landlord Liability*.

Generally, a landowner has a duty to keep its premises safe for visitors, and this duty "depends, to a certain extent, on whether the one entering the property is an invitee, a licensee or a trespasser." *Lipham v. Federated Dept. Stores*, 263 Ga. 865, 865 (440 SE2d 193) (1994). This duty is codified, in relevant part, in OCGA §§ 51-3-1, 51-3-2, and 51-3-3. The first of these Code sections establishes that a landowner owes a duty of ordinary care "in keeping the premises and approaches safe" when the landowner has extended an invitation to the visitor:

> Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure

8

to exercise ordinary care in keeping the premises and approaches safe.

OCGA § 51-3-1. The next Code section defines "licensees" and clarifies that landowners owe a different and lower standard of care — liability only for "willful or wanton injury" — for visitors who are classified as licensees:

> (a) A licensee is a person who:
>   (1) Is neither a customer, a servant, nor a trespasser;
>   (2) Does not stand in any contractual relation with the owner of the premises; and
>   (3) Is permitted, expressly or impliedly, to go on the premises merely for his own interests, convenience, or gratification.
> (b) The owner of the premises is liable to a licensee only for willful or wanton injury.

OCGA § 51-3-2. The third Code section likewise establishes that a landowner owes no duty of care to a visitor classified as a trespasser, "except to refrain from causing a willful or wanton injury." OCGA § 51-3-3 (b).

In explaining the distinction between invitees and licensees, we have stated that "the determining question as to whether a visitor is an invitee by implication or a licensee is whether or not the

9

owner or occupant of the premises will receive some benefit, real or supposed, or has some interest in the purpose of the visit." *Anderson v. Cooper*, 214 Ga. 164, 169 (104 SE2d 90) (1958). The Court of Appeals similarly has said that "a person may be deemed an invitee if his presence on the property is of mutual benefit to both him and the landowner," whereas a licensee "falls between" an invitee and a trespasser and "is one who is permitted, either expressly or impliedly, to go on the premises of another, but merely for his own interest, convenience, or gratification." *Matlack v. Cobb Elec. Membership Corp.*, 289 Ga. App. 632, 634 (658 SE2d 137) (2008). See also *Esposito v. Pharr Court Assoc., L.P.*, 334 Ga. App. 434, 437 (779 SE2d 675) (2015) ("The mutuality of interest required to make one an invitee upon the premises of another does not mean that there must be a commercial business transaction between the parties. It is sufficient to show that each party is moved by a lawful purpose or interest in the object and subject matter of the invitation.") (citation and punctuation omitted).

These principles become more complicated when the landowner is also a landlord who is leasing parts of the property to tenants. A landowner's duty to visitors is imposed "because the landowner has control over the property and is thus able to act in order to protect others from conditions on the property which might cause harm." *Lipham*, 263 Ga. at 865. See also *Robinson v. Kroger Co.*, 268 Ga. 735, 736 (493 SE2d 403) (1997) (the "fundamental basis for an owner or occupier's liability" under OCGA § 51-3-1 is "that party's superior knowledge of the hazard encountered by the plaintiff"). But when the landowner cedes possession of the property to a tenant, the landowner's control over the property and the concomitant ability to make the property safe becomes limited. See *Colquitt v. Rowland*, 265 Ga. 905, 906 (463 SE2d 491) (1995) ("[T]he use of the tenements really belongs to the tenant during the lease; they are his property to use for the term for which they are rented; and the landlord has no right to enter upon them, except by permission of the tenant, during the term for which they are rented.") (citations and punctuation omitted).

11

For this reason, Georgia law has long excepted landlords from general landowner liability with respect to premises possessed by tenants; this exception is now codified in OCGA § 44-7-14, which provides:

> Having fully parted with possession and the right of possession, the landlord is not responsible to third persons for damages resulting from the negligence or illegal use of the premises by the tenant; provided, however, the landlord is responsible for damages arising from defective construction or for damages arising from the failure to keep the premises in repair.[4]

See also *Colquitt*, 265 Ga. at 906 ("A landlord's liability to a third person who is injured on property which was relinquished by rental

---

[4] OCGA § 44-7-14 has been interpreted narrowly. We have held, for instance, that OCGA § 44-7-14 does not include a "duty of maintenance," and we have stated that "any alteration or expansion of an out-of-possession landlord's statutory liability must emanate from the legislature and not from the courts of this State." *Martin v. Johnson-Lemon*, 271 Ga. 120, 123, 125 (516 SE2d 66) (1999).

A related statute applicable to landlords is OCGA § 44-7-13, which provides: "The landlord must keep the premises in repair.  He shall be liable for all substantial improvements placed upon the premises by his consent." We have held, however, that this Code section "imposes contractual, but not tort, liability on a landlord."  *Colquitt*, 265 Ga. at 906.  See also *Langley v. MP Spring Lake, LLC*, 307 Ga. 321, 326 (834 SE2d 800) (2019) ("[T]he duties imposed by OCGA § 44-7-13 sound only in contract, not in tort . . . .").

12

or under a lease is determined by OCGA § 44-7-14."); *Birdsey v. Greene*, 176 Ga. 688, 689-690 (168 SE 564) (1933) (summarizing the history of the predecessor to OCGA § 44-7-14).[5]

In many instances, a landlord's plot of land contains both areas that are possessed by the landlord (such as the common areas of an apartment complex) and areas possessed by tenants (i.e., the apartments themselves). In such cases, a landlord's tort liability for a danger on its property is determined by the area where that danger lurks. If the dangerous condition that ultimately causes an injury is located in an area the landlord still possesses, then liability under OCGA § 51-3-1 et seq. applies, and OCGA § 44-7-14 does not apply by its own terms. See OCGA § 44-7-14 (applying to landlords

---

[5] The language in OCGA § 44-7-14 has remained virtually unchanged since it was first codified in 1895. See Georgia Code of 1895, § 3118 ("The landlord, having fully parted with possession and right of possession, is not responsible to third persons for damages resulting from the negligent or illegal use of the premises by the tenant. But he is responsible to others for damages arising from defective construction, or for damages from failure to keep the premises in repair."); Georgia Code of 1910, § 3694 (same). See also *Roach v. Le Gree,* 18 Ga. App. 250, 251 (89 SE 167) (1916) (stating that, at common law, before Georgia embraced the principle now codified in OCGA § 44-7-14, "the tenant, and not the landlord, was bound to make all necessary repairs, unless there was an express stipulation to the contrary in the rental contract.").

who have "fully parted with possession and the right of possession");

*Langley v. MP Spring Lake, LLC*, 307 Ga. 321, 326-327 (834 SE2d 800) (2019) (quoting *Johnson v. Green Growth 1, LLC*, 305 Ga. App. 134, 136 (699 SE2d 109) (2010) ("Where . . . the landlord has retained control over common areas of an apartment complex to which tenants and others are allowed access, the landlord has a legal duty under OCGA § 51-3-1 to exercise ordinary care in keeping the common areas safe.") (punctuation omitted)).[6]

Conversely, if the dangerous condition exists in an area possessed by the tenant (such as in the tenant's residence), then a

---

[6] Of course, OCGA § 51-3-1 et seq. is not the only source of a landowner's liability for injuries occurring on the property the landowner occupies; this statutory framework concerns the "condition of the premises," and it does not apply to cases of "active negligence." See *Lipham*, 263 Ga. at 865 (holding that OCGA § 51-3-1 et seq. did not apply to limit the liability of a store owner for the negligent act of its employee, who had unintentionally knocked plaintiff to the ground). See also *Byrom v. Douglas Hosp., Inc.*, 338 Ga. App. 768, 771-772 (792 SE2d 404) (2016) ("[N]ot all claims which arise from an injury sustained inside a building constitute premises liability . . . . Liability is determined under the framework of premises liability only if an injury is caused by a condition of the premises over which the premises owner/occupier has some degree of control, such as a static condition or passive defect.").

landlord's liability derives from OCGA § 44-7-14 and not from OCGA § 51-3-1.[7] See *Martin v. Johnson-Lemon*, 271 Ga. 120, 123 (516 SE2d 66) (1999) (where the injury occurred on leased property possessed by tenant, landlord's liability was governed by OCGA § 44-7-14, and OCGA § 51-3-1 did not apply). See also *Motel Properties, Inc. v. Miller*, 263 Ga. 484, 486 n.6 (436 SE2d 196) (1993) (it is a "well-established principle that where control over premises has been relinquished to another, the owner . . . of those premises cannot be held liable under OCGA § 51-3-1"); *Crook v. Foster*, 142 Ga. 715, 718 (83 SE 670) (1914) (because the defendant landlord was not in possession of the premises where plaintiff's decedent was injured, it was not necessary to decide whether the decedent was a licensee on the premises; the only question was whether landlord was liable for

---

[7] In other words, a landowner's liability under OCGA § 44-7-14 derives from his status as a "landlord," but his liability under OCGA § 51-3-1 derives from his status as an "owner or occupier of land." See *Langley*, 307 Ga. at 326 ("The relationship between an owner and an invitee is separate from the relationship between a landlord and a tenant. Those relationships involve distinct statutory duties . . . even though a person's status as a tenant may also make that person an invitee to the property."). By its terms, OCGA § 44-7-14 imposes no duty on the tenant, but the tenant may be liable under OCGA § 51-3-1 for defects on premises possessed or "occupie[d]" by the tenant.

defective construction or failure to repair under predecessor to OCGA § 44-7-14).

(b) *Decisional Law Relating to Premises Liability.*

A number of decisions from the Court of Appeals on which the parties in this case rely have failed adequately to consider or explain the distinction between these two mutually exclusive sources of liability — OCGA § 51-3-1 et seq. and OCGA § 44-7-14 — which has created some confusion with respect to premises liability law as it is applied to landlords and tenants and which led the Court of Appeals in this case astray. One early source of this confusion is *Crossgrove v. Atlantic Coast Line R. Co.*, 30 Ga. App. 462 (118 SE 694) (1923). There, the defendant railroad company employed a "section foreman" and provided him with a furnished dwelling house as part of his employment. Id. at 462. The foreman's daughter, who resided in the house, was injured when the steps in the house collapsed, and she sued the company for damages. See id. The trial court dismissed the lawsuit, but the Court of Appeals reversed. After setting forth the general principles of premises liability, including

16

the distinction between invitees and licensees, the Court of Appeals determined that the plaintiff's complaint did not show that the company extended "an express or implied invitation" to the daughter. Id. at 464. And recognizing that a mere "licensee" status would not form a basis for liability, the court reasoned that the company could be liable only under a "theory that the relationship between the plaintiff's father and the defendant was that of landlord and tenant." Id.

The *Crossgrove* court then stated the following proposition: "Members of a tenant's family, his guests, servants, employees, or others present by his express or implied invitation, stand in his shoes, and are controlled by the rules governing the tenant as to the right of recovery for injuries arising from failure to keep the premises in repair." Id. To support this proposition, the Court of Appeals cited three cases from this Court that dealt with an *out-of-possession landlord's* liability under the predecessor statute to

OCGA § 44-7-14.[8]   Based on this reasoning, the *Crossgrove* court

ultimately concluded that the lawsuit could proceed under the

landlord-tenant theory of liability because the complaint sufficiently

alleged a landlord-tenant relationship between the plaintiff's father

and the company.  See *Crossgrove*, 30 Ga. App. at 465-466.

*Crossgrove*'s statement about guests standing in the tenant's

"shoes" applied under the facts of that case to determine an out-of-

possession landlord's liability under what is now OCGA § 44-7-14.[9]

But in later cases, the Court of Appeals cited this "stands-in-the-

shoes" proposition in a different statutory context: assessing a

landlord's premises liability under OCGA § 51-3-1 — that is, liability

for injuries that arose from dangers present in the common areas of

an apartment building or complex of which the landlord is *in*

---

[8] See *Ross v. Jackson*, 123 Ga. 657, 659 (51 SE 578) (1905); *Crook*, 142 Ga. at 718; *Ocean S.S. Co. v. Hamilton*, 112 Ga. 901, 903 (38 SE 204) (1901).

[9] We express no opinion as to whether *Crossgrove* was correct in that regard.  It appears that *Crossgrove* was elaborating on our statement in *Ross* that under the predecessor to OCGA § 44-7-14, a landlord would be "answerable to the tenant, or to any one lawfully on the premises by invitation of the tenant."  See also *Crook*, 142 Ga. at 718 (under predecessor to OCGA § 44-7-14, landlord "'is liable in damages to a person who receives injury while lawfully upon the premises'") (quoting *Ross*).

*possession.* See *Paul v. Sharpe*, 181 Ga. App. 443, 444-445 (352 SE2d 626) (1987) (citing the stands-in-the-shoes proposition where plaintiff-visitor was injured by a defective railing on a bridge in the common area of an apartment complex); *Rothberg v. Bradley*, 85 Ga. App. 477, 481, 483-485 (69 SE2d 293) (1952) (referring to the proposition where plaintiff-visitor was injured after falling into an unguarded shaft on the roof of an apartment building that was used as a common area). See also *Scully v. Bd. of Regents of Univ. Sys. of Ga.*, 332 Ga. App. 873, 875-876 (775 SE2d 230) (2015) (citing the proposition where plaintiff-visitor was injured on a university campus, outside a residence hall).

*Crossgrove* aside, the Court of Appeals has, in other cases, referred to the invitee/licensee distinction — derived from the language in OCGA § 51-3-1 et seq. — in circumstances where an injury arose on tenant-possessed property and where the landlord's liability should have been premised on OCGA § 44-7-14 instead. See, e.g., *Silman v. Assoc. Bellemeade*, 294 Ga. App. 764, 764-765 (669 SE2d 663) (2008) (stating that plaintiff was an invitee as to the

landlord, and that landlord could be liable to her under OCGA § 51-3-1, even though plaintiff was injured on tenant-possessed property, when the deck of a rented house collapsed);[10] *Hohnerlein v. Thomas*, 186 Ga. App. 282, 282 (367 SE2d 95) (1988) (citing *Rothberg* for the proposition that a tenant's guest "is an invitee upon the premises of the landlord," even though plaintiff was injured by a defect on the porch of a rented home).[11]

Another case that has improperly conflated the duties of landlords and landowners is *Brown v. Clay*, 166 Ga. App. 694 (305 SE2d 367) (1983), which the Court of Appeals discussed in this case

---

[10] In *Silman*, the plaintiff also sued the tenants, so the Court of Appeals was correct to assess the *tenants'* liability under OCGA § 51-3-1 et seq. See *Silman*, 294 Ga. App. at 764.

[11] We recognize that there may be situations where someone described as a "landlord" has not "fully parted with possession and the right of possession," OCGA § 44-7-14, in which case such "landlord's" liability properly would be analyzed under OCGA § 51-3-1 et seq. See generally OCGA § 44-7-1 (a) ("The relationship of landlord and tenant is created when the owner of real estate grants to another person, who accepts such grant, the right simply to possess and enjoy the use of such real estate either for a fixed time or at the will of the grantor. . . ."). Because the landlord would be in control of the rented premises in that situation (along with his "tenants"), there would not necessarily be a reason to limit the landlord's ordinary duty to keep the premises safe. See *Lipham*, 263 Ga. at 865. The cases cited above, however, do not describe such circumstances.

20

and whose significance the parties fervently debate on appeal. In *Brown*, the plaintiff was injured when he jumped from a second-story window of a rooming house to escape a fire, and he sued the landlord for "negligence in failing to provide safe premises for tenants," though the nature of the alleged defect, or where that defect was located, is unclear from the opinion. See id. at 694-695. The room in question was leased by a friend of the plaintiff, and the friend allowed the plaintiff to stay there occasionally, albeit without the knowledge or consent of the landlord, who had prohibited tenants from having overnight guests. See id. at 695.

In affirming the grant of summary judgment to the landlord, the *Brown* court first cited the stands-in-the-shoes proposition, and then proceeded to analyze the case under OCGA § 51-3-1 et seq., stating that a guest of a tenant is an invitee if "the primary purpose of the visit is of mutual benefit to the tenant and guest," but that "a landlord is liable to one injured while visiting a tenant for his (the visitor's) own personal advantage only for wilful or wanton injury to the visitor, a licensee." *Brown*, 166 Ga. App. at 694 (citations and

21

emphasis omitted). The court then determined that the plaintiff was a licensee because his stay at the rooming house was "for his own convenience and not for the mutual benefit of the *tenant*." Id. at 696 (emphasis supplied).

*Brown*'s reasoning is flawed for at least two reasons. First, the *Brown* court should have made clear where the alleged cause of the injury lay — whether in an area possessed by the tenant or in an area possessed by the landlord — because that fact determines the source of the landlord's liability: either OCGA § 44-7-14 (if possessed by a tenant) or OCGA § 51-3-1 et seq. (if possessed by a landlord). Second, the *Brown* court was wrong to suggest that the landlord's liability under OCGA § 51-3-1 et seq. depends entirely on the relationship between the visitor and the *tenant*. Because liability under OCGA § 51-3-1 is based on defects occurring on landlord-possessed premises, as discussed above, such liability must be determined by the visitor's relationship with the *landlord*, even though the tenant-visitor relationship may inform the landlord-visitor relationship. See OCGA § 51-3-1 (imposing liability on an

"owner or occupier of land" who, "by express or implied invitation, induces or leads others to come upon *his premises* for any lawful purpose") (emphasis supplied). That a guest would have been deemed a licensee of the *tenant* on premises possessed by the tenant (as was the case in *Brown*) does not resolve the question of whether the guest was a licensee of the *landlord* on landlord-possessed premises.[12]

3. *Analysis.*

Having reviewed the relevant background principles of premises liability and the historical patchwork of sometimes-misguided decisional law in this area, we now turn to the question at hand: whether there was "slight" evidence presented at trial that Callens was a licensee, so as to warrant a jury instruction on licensees. See *Daly*, 308 Ga. at 833. Plaintiffs contend that there was no such evidence and insist that Callens was either an invitee

---

[12] While we disapprove of the reasoning in *Brown* and the other cases cited above that have conflated the duties or liabilities of landlords and landowners, we express no opinion as to whether the ultimate conclusions of those cases were correct.

23

or a trespasser. They argue that Callens was a guest of the tenant (Jones), and that a "social guest" of a tenant generally is an invitee of the landlord — just as the tenant herself is an invitee of the landlord — because the guest of a tenant "stands in the shoes" of the tenant with regard to the duty owed by the landlord. Defendants respond that, among other things, the stands-in-the-shoes principle does not apply in cases brought under OCGA § 51-3-1 et seq. and that social guests, like Callens, are presumptively licensees under Georgia law, absent evidence of an identifiable mutuality of interest with the landlord.

As an initial matter, there is no dispute that Callens was killed due to criminal activity that took place in a parking lot — a common area of the apartment complex — and that the source of the Defendants' liability is OCGA § 51-3-1 et seq. as a result. See *Sturbridge Partners, Ltd. v. Walker*, 267 Ga. 785, 785 (482 SE2d 339) (1997) (a landlord's liability for criminal attacks on its premises "must be predicated on a breach of duty to 'exercise ordinary care in keeping the premises and approaches safe'") (quoting OCGA § 51-3-

24

1); *FPI Atlanta, L.P. v. Seaton*, 240 Ga. App. 880, 882 (524 SE2d 524) (1999) ("The landlord's liability for third-party criminal conduct arises under OCGA § 51-3-1 . . . ."). For this reason, and contrary to the Plaintiffs' argument, the stands-in-the-shoes principle announced in *Crossgrove* has no bearing in this case. As discussed above, that principle originated in the context of landlord-tenant liability under the predecessor to OCGA § 44-7-14. And even if that principle is sound in the context of OCGA § 44-7-14, we are aware of no cases (and Plaintiffs offer none) in which this Court has extended it to premises liability under OCGA § 51-3-1, and we see no reason to do so here — especially since nothing in the text of OCGA § 51-3-1 et seq. sets forth such a principle. See generally *Fed. Deposit Ins. Corp. v. Loudermilk*, 305 Ga. 558, 562 (826 SE2d 116) (2019) (stating that "a statute draws its meaning from its text" and setting forth other principles of statutory interpretation) (citation and punctuation omitted). Because the stands-in-the-shoes principle does not apply in this case, Callens was not automatically an invitee of the landlord simply because he was Jones's guest.

In the same vein, characterizing Callens as a "social guest" of Jones also would not automatically make Callens a licensee of *Defendants*, as the Court of Appeals below suggested. As discussed above, in assessing the landlord's liability to a visitor on *landlord-occupied premises*, the touchstone is *not* the visitor's relationship to the tenant, but his relationship to the *landlord* (i.e., the "owner or occupier of land"). See OCGA § 51-3-1. And the proper inquiry for evaluating that relationship is assessing "whether or not the *owner or occupant of the premises* will receive some benefit, real or supposed, or has some interest in the purpose of the visit." *Anderson*, 214 Ga. at 169 (emphasis supplied). See also *McGarity v. Hart Elec. Membership Corp.*, 307 Ga. App. 739, 742 (706 SE2d 676) (2011) ("[T]he *owner or occupier* has a duty not to wilfully or wantonly injure a licensee . . . .") (emphasis supplied). Here, Jones was not the "owner or occupier" of the premises where Callens was attacked — Defendants were — and so the dispositive factor is

whether Defendants received some benefit or had some interest in

Callens's presence on the premises.[13]

---

[13] To put a finer point on it, Defendants' interest in Callens's presence in the parking lot was not the same as Jones's interest in his presence in her apartment. A person who comes to a tenant's apartment for a social visit will in most cases be an invitee of the landlord in the common area of an apartment complex, because the landlord generally "receive[s] some benefit" or has "some interest" in the guest's presence on the property. See *Anderson*, 214 Ga. at 169. After all, a landlord of an apartment complex is in the business of providing residences to tenants, and a common and natural use of a residence is to invite social guests; it is thus normally in the landlord's interest to lease residences that can be used to entertain social guests, rather than to limit their use by prohibiting or discouraging guests. See *Reardon v. Shimelman*, 128 A 705, 706 (Conn. 1925) (a "right of ingress and egress" for lawful guests of tenant "is essential, not merely to the enjoyment of the rented premises by the tenants, but also to the renting of them by the landlord; it is part of that for the use of which he is paid, and it exists for the mutual benefit of landlord and tenants alike"); *Stanley v. Town Square Cooperative*, 512 NW2d 51, 54 (Mich. App. 1993) (the landlord receives "some pecuniary benefit" from the visits of tenant's social guests because "[p]art of the rent paid to the landlord is the consideration for giving to the tenants the right to invite others onto the property").

Similarly, in the commercial context, the customer of a business is typically an invitee of the business owner, and our courts generally have agreed that a guest or companion of a customer may also be considered an invitee on business premises, even though the guest has no business relationship with the owner or proprietor. See *Anderson*, 214 Ga. at 169 (child who accompanied his father into the bakery shop was an invitee of the shopkeeper; bringing a child into a shop "is a customary use of the premises and is conduct on the part of parents which the occupant was bound to have known," and the shopkeeper gained an opportunity to make a sale by allowing the father to bring his child inside); *Esposito*, 334 Ga. App. at 437 (jury was authorized to find that plaintiff was invitee of the nursing home when she was injured while visiting her husband at the home; there was evidence that plaintiff "provided much of the daily care for her husband, which obviously

27

Importantly, we need not decide whether Callens could be considered a social guest of Jones or whether being a social guest would make him an invitee or a licensee. That is because the limited question in this case is whether "slight" evidence was presented at trial that Callens was a licensee, irrespective of whether there was

lightened the burden of the nursing home staff" and that the home's "own director of nursing considered visitors to be customers"); *Freeman v. Eichholz*, 308 Ga. App. 18, 22 (705 SE2d 919) (2011) (visitor of a prison inmate was invitee of the prison because "visitation between inmates and their authorized and properly admitted visitors benefits both the visitor and the defendants so that a 'mutuality of benefit' exists"). Compare *Jones v. Asa G. Candler, Inc.*, 22 Ga. App. 717, 717 (97 SE 112) (1918) (plaintiff was a licensee of the owner of an office building — where she was injured in the hallway — because undisputed facts showed that the plaintiff was visiting a business tenant inside the building to solicit a donation, as opposed to transacting business) (citing *Plummer v. Dill*, 31 NE 128, 128 (Mass. 1892) (plaintiff was licensee inside office building because she "did not go there to transact with any occupant of the building any kind of business in which he was engaged, or in the transaction of which the building was used or designed to be used")).

On the whole, these cases illustrate how the mutuality of benefit between a tenant's social guest and a landlord or a customer's companion and a business owner typically result in the guest or companion being invitees of the landlord and the business owner, respectively. But they do not control the different (and dispositive) issue here: whether there was at least slight evidence that a person who visits a tenant in an apartment *continually* — not once, a few times, or even regularly — and who was at the same time not prohibited from visiting the tenant, exceeded the scope of any invitation the landlord expressly or impliedly extended to him such that he was neither an invitee nor a trespasser.

also evidence presented that Callens was a different type of visitor.[14]

And here, we conclude that at least slight evidence was presented at trial from which the jury could have concluded that Callens was a licensee with respect to the landlord.

To begin, we acknowledge that some evidence was presented that Callens was an invitee (and not a licensee) of the landlord, independent of any status as a social guest. That evidence included Jones's testimony, which indicated that the apartment-complex management expressly (or at least implicitly) authorized Callens to reside on the premises, and that this permission directly benefited the Defendants by inducing Jones to lease a three-bedroom apartment. But the jury did not have to credit all (or any) of Jones's

---

[14] Indeed, even assuming (without deciding) that a "social guest" of a tenant is an implied invitee of the landlord — at least where the landlord has not prohibited such social guests altogether — the jury could have found, based on the evidence presented at trial, that Callens was not a "social guest" at all. For example, the jury could have viewed the evidence as demonstrating that Callens exceeded the scope of any implied invitation to visit Jones's apartment by staying far longer than any foreseeable "social guest" the landlord would have reasonably anticipated. But even a conclusion that Callens was not a social guest still would not answer the question of which type of visitor he was under OCGA § 51-3-1 et seq., and thus what duty the landlord owed him in this case.

29

testimony, including testimony that suggested Callens was a full-time resident of the apartment or that management knew about his residence there. See *Montgomery v. Barrow*, 286 Ga. 896, 899 (692 SE2d 351) (2010) ("[I]t is a jury's prerogative to accept or reject, in whole or in part, the evidence submitted . . . ."); *Hines v. State*, 254 Ga. 386, 387 (329 SE2d 479) (1985) ("The jury is entitled to believe a part of the testimony of a witness and disbelieve other parts.") (citation and punctuation omitted).

On the other hand, evidence that Callens was not listed on the rental application did not necessarily establish that he was a trespasser. Testimony showed that Defendants had a "policy" that every adult who resides in a rented apartment should be listed on the lease. But a "policy" can mean something less than an absolute mandate. See Black's Law Dictionary (11th ed. 2019) (defining "policy" as a "standard course of action that has been officially established by an organization, business, political party, etc."). And the lease agreement itself — including the provision that "this apartment shall . . . be occupied only by persons named in resident's

application to rent" — on its face was not binding on Callens, who had not signed it. In any event, the jury could have concluded that the Defendants chose not to enforce the named-occupant provision.[15] Thus, the lease agreement does not necessarily render Callens a trespasser in the parking lot where he was killed.

Given all of the above, we cannot say that the only plausible view of the evidence presented at trial was that, at the time Callens was robbed and shot in the apartment parking lot, Defendants had expressly or implicitly invited Callens to be on the property or, conversely, prohibited him from being there. And that left space for at least "slight" evidence that Callens met all of the definitional requirements of a "licensee" under OCGA § 51-3-2, including that he was "permitted, expressly or impliedly, to go on the premises merely for his own interests, convenience, or gratification." See *Daly*, 308

---

[15] Indeed, the lease agreement stated that, if the tenant "allows unauthorized persons access to the Apartment or Premises in violation of this Lease," the tenant "shall be in default hereunder, and, Management *at its sole option*, *may* terminate this Lease by written notice to Resident." (Emphasis supplied.) We disapprove of *Gomez v. Julian LeCraw & Co.*, 269 Ga. App. 576 (604 SE2d 532) (2004), to the extent it suggests that, as a matter of law, a person is always a trespasser under OCGA § 51-3-3 if he resides with a tenant in an apartment in violation of the lease.

Ga. at 834 ("[I]f there was slight evidence supporting the instruction[,] . . . it is irrelevant whether we find that slight evidence persuasive in the face of contrary evidence; that question was reserved exclusively for the jury.").

More specifically, in light of all of the evidence presented at trial, the jury was authorized to conclude that the rental agreement and management policy discussed above indicate that the Defendants had no interest in having people (such as Callens) live in the apartment complex and continually use the common areas without signing the lease or being listed on the rental application (as opposed to just visiting as guests). And the jury could have inferred from Jones's testimony that Defendants never told Callens he could not be on the property and did not otherwise prohibit him from being there, while also discrediting other aspects of Jones's testimony that could have constituted evidence that Callens was an invitee. At least slight evidence was presented that Callens's extended stay in Jones's apartment and his concomitant use of the common areas occurred with the Defendants' permission but

32

"merely for his own interests," see OCGA § 51-3-2 (a) (3), and, as a result, the jury would have been authorized to conclude that Callens was a licensee with respect to Defendants. Accordingly, the trial court did not err in instructing the jury on the law concerning licensees,[16] and although we disagree with the Court of Appeals's reasoning on this issue — and in particular its suggestion that a social guest of the tenant generally is a licensee of the landlord — we affirm its judgment. See *Nordahl v. State*, 306 Ga. 15, 27 (829 SE2d 99) (2019) (affirming the judgment of the Court of Appeals under the "right-for-any-reason doctrine").

*Judgment affirmed. All the Justices concur, except Boggs, Peterson, and Ellington, JJ., who dissent.*

---

[16] We note, however, that the pattern jury charge on licensees — which suggests that "business relations with the owner of the premises" is part of the "general test" for licensees — may not apply as readily to visitors of tenants, as opposed to customers of businesses. Accordingly, to the extent the evidence on retrial supports a licensee charge, the trial court may consider tailoring the pattern charge to better fit that evidence. See *Anderson*, 214 Ga. at 169; *Esposito*, 334 Ga. App. at 437.

PETERSON, Justice, dissenting.

In a thoughtful and scholarly opinion, the majority correctly explains the distinction between the two primary sources of landlord liability — OCGA § 51-3-1 et seq. and OCGA § 44-7-14 — that have often been conflated in our courts. And the majority correctly concludes that there was evidence supporting a finding that Franklin Callens was an invitee or trespasser relative to the Defendants. But the majority also concludes that there was slight evidence showing that Callens could have been a licensee, and thus it was proper to instruct the jury on licensee law. In my view, if Asia Jones had authority from the landlord to host Callens as she did, he was an invitee. If she did not have that authority, Callens was a trespasser unless he had separate permission from the landlord for reasons unrelated to Jones (which might have made him a licensee). There is no evidence of such permission from the landlord to Callens, and so I respectfully dissent.

The authority to host guests in your home is for many people a key element of what it means for a home to be yours. When you rent

34

a home, the landlord can impose restrictions on your authority to host guests. But when a landlord imposes such restrictions, some potential renters will pass the property by and rent from a different landlord who offers more freedom. The fewer the potential renters, the more difficult the landlord will find it to rent the property at the desired amount. Accordingly, a landlord who allows a renter to host guests in the rented property generally stands to benefit financially from that arrangement.

The majority acknowledges the truth of this reasoning. And, indeed, in our first case to consider a similar issue under what is now OCGA §§ 51-3-1 and 51-3-2, we employed virtually identical reasoning, concluding that it was "obvious" that a store owner would receive a benefit from permitting an invitee's guest to be present. See *Anderson v. Cooper*, 214 Ga. 164 (104 SE2d 90) (1958) (on a general demurrer, which was the equivalent of the modern motion to dismiss, drawing common-sense inferences to hold that a child accompanying parent into shop was an invitee because parents would not enter shop at all if not allowed to bring their children, and

shop owners benefit from more customers).

In my view, this generally means that when renters are allowed to host guests, the guests are thus implicitly invited by the landlord (who has already benefitted financially by extending the implicit invitation). Accordingly, those guests are invitees of the landlord, who thus owes them the duty imposed by OCGA § 51-3-1 as to premises the landlord still possesses (like the parking lot at issue in this case). And when renters are not allowed to host guests, any guests they host despite the ban are trespassers.

What this reasoning does not generally allow is a third category of guest as licensee. Either the renter is allowed to host the guest, or the renter is not allowed to host the guest. Absent at least slight evidence of some separate permission from the landlord to the guest for reasons unconnected to the renter, the guest's presence is permissible or not based entirely on the authority the landlord has granted the renter. And if the renter is allowed to have guests, but the guest exceeds the scope of the landlord's implied invitation, then the guest is a trespasser. The majority points to no evidence, slight

36

or otherwise, that the landlord gave Callens permission to be present in the parking lot for reasons unconnected to Jones. In the absence of such evidence, I see no basis for a licensee charge.[17]

Accordingly, I respectfully dissent.

I am authorized to state that Justice Boggs and Justice Ellington join in this dissent.

---

[17] I agree with the majority that the reasoning of *Brown v. Clay*, 166 Ga. App. 694 (305 SE2d 367) (1983), was wrong, although for a different reason. The Court of Appeals clearly stated in *Brown* that the landlord prohibited overnight guests. See id. at 695. Accordingly, the renter lacked authority to host the guest, and the guest was a trespasser, not a licensee.

I also note that the pattern jury instruction on licensee law, while correctly stating general principles of law, is the wrong instruction to give even under the majority's theory of the case. The instruction's focus on whether there was a business relationship between the guest and the landlord does not acknowledge the implied invitation most guests have from the landlord by virtue of the landlord's authorization to the renter to host guests. This would likely mislead a jury into finding many guests to be licensees when they should properly be understood as invitees. The majority's observation that the trial court "may consider tailoring" the charge is a good one, but does not go quite far enough. (Maj. op. p. 184 n. 16.)

Decided March 15, 2021 —Reconsideration denied March 30, 2021.

Certiorari to the Court of Appeals of Georgia — 353 Ga. App. 162.

*The Summerville Firm, J. Darren Summerville, Maxwell K. Thelen; Shiver Hamilton, Jeffrey P. Shiver, Alan J. Hamilton, R. Scott Campbell, Daniel C. Beer*, for appellants.

*Hall Booth Smith, John E. Hall, Jr., Jeffery R. Saxby, Paul B. Trainor, Pearson K. Cunningham*, for appellees.