**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 12, 2024**

# In the Court of Appeals of Georgia

A23A1387, A23A1388. MARQUITA JORDAN, AS PERSONAL REPRESENTATIVE OF SINCERE JORDAN, DECEASED v. H. J. RUSSELL & COMPANY et al; and vice versa.

RICKMAN, Judge.

Following the shooting of a minor, S. J., inside a leased apartment, the mother, Marquita Jordan, sued H. J. Russell & Company, Etheridge Court Redevelopment Partnership I, LP, Etheridge Court Redevelopment Partnership I, LP, and John Does Nos. 1-5 (collectively, "the Defendants"), the owners and managers of the apartment complex. The mother asserted a claim under Georgia's premises liability statute. The case proceeded to a jury trial and, following the grant of a directed verdict as to one of the mother's theories of liability, the jury returned a defense verdict. The trial court subsequently entered a judgment in favor of the Defendants.

Both sides appeal. The Defendants contend that the trial court erred by failing to grant a directed verdict as to the mother's entire case and the mother contends, inter alia, that the trial court erred by granting the directed verdict. For the reasons that follow, we agree with the Defendants that the trial court erred by failing to grant a directed verdict as to the mother's entire case and thus, in Case No. A23A1387, we affirm and in Case No. A23A1388, we reverse.

In reviewing the grant or denial of a directed verdict, we recognize that

> [a] directed verdict is proper only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. . . .In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict. The standard used to review the grant or denial of a directed verdict is the any evidence test.

(Citation and punctuation omitted.) *Moran v. Kia Motors America*, 276 Ga. App. 96, 96 (622 SE2d 439) (2005). See OCGA § 9-11-50 (a) ("If there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed.").

So viewed, the record showed that Rolling Bends Apartments was a subsidized, affordable housing complex in Atlanta. The apartments were owned and managed by the Defendants. The mother lived at Rolling Bends with S. J. and her other children. It is undisputed that one evening in the summer of 2017, S. J. went to another apartment in Rolling Bends with some other children to play video games. While at the apartment, another minor retrieved a handgun from his mother's closet. The details of the actual incident are not clear, but it is undisputed that the minor retrieved the gun and it eventually fired, killing S. J.. The minor's mother pled guilty to murder in the second degree and cruelty to children in the second degree as a result of the incident.

At trial, S. J.'s mother presented evidence from three other Rolling Bends' residents that a few days prior to the incident, they each saw the minor who retrieved the gun, with something resembling a gun in his hand at Rolling Bends: on a balcony; on a sidewalk; and outside an apartment building. All three residents testified that they told security guards about seeing the minor with what appeared to be a gun.

The mother filed suit against the Defendants alleging, inter alia, that Defendants had a legal duty to keep the premises safe and to protect its tenants from

3

unlawful acts thereon and that the Defendants breach of these duties was a proximate cause of S. J.'s fatal injures. The Defendants filed a motion for summary judgment and, in their reply brief, argued that Georgia's premises liability statute, OCGA § 51-3-1,[1] was inapplicable in this case, and the case was properly analyzed under Georgia's landlord-tenant statute, OCGA § 44-7-14.[2] The trial court denied the Defendants' motion for summary judgment.

The case proceeded to trial, and following a directed verdict in favor of the Defendants as to the mother's theory of liability alleging a violation of the landlord-tenant statute, the jury returned a defense verdict.

The Defendants contend that the trial court erred by failing to grant a directed verdict as to the mother's entire case and the mother contends, inter alia, that the trial court erred by granting the directed verdict.

---

[1] "Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." OCGA § 51-3-1.

[2] "Having fully parted with possession and the right of possession, the landlord is not responsible to third persons for damages resulting from the negligence or illegal use of the premises by the tenant; provided, however, the landlord is responsible for damages arising from defective construction or for damages arising from the failure to keep the premises in repair." OCGA § 44-7-14.

When considering whether liability applies under OCGA § 44-7-14 or OCGA § 51-3-1, our Supreme Court has explained,

> in many instances, a landlord's plot of land contains both areas that are possessed by the landlord (such as the common areas of an apartment complex) and areas possessed by tenants (i.e., the apartments themselves). In such cases, a landlord's tort liability for a danger on its property is determined by the area where that danger lurks. If the dangerous condition that ultimately causes an injury is located in an area the landlord still possesses, then liability under OCGA § 51-3-1 et seq. applies, and OCGA § 44-7-14 does not apply by its own terms.

*Cham v. ECI Mgmt. Corp.*, 311 Ga. 170, 176 (2) (a) (856 SE2d 267) (2021). "Conversely, if the dangerous condition exists in an area possessed by the tenant (such as in the tenant's residence), then a landlord's liability derives from OCGA § 44-7-14 and not from OCGA § 51-3-1." Id.

*Cham* explains that in determining the source of a landlords liability, the main question is "where the alleged cause of the injury lay." See *Cham*, 311 Ga. 179, 2 (b) Assuming that the minor was seen with a gun in common areas in the weeks before the shooting incident, that does not change the analysis here. On the date of the tragic incident, the minor retrieved a loaded gun inside his mother's apartment, where S. J.

was fatally shot. Thus, the cause of the injury lay inside the apartment and the Defendants' potential liability therefore derives from OCGA § 44-7-14, not OCGA § 51-3-1. See *Cham*, 311 Ga. at 176 (2) (a)

The mother argues that *Martin v. Six Flags Over Ga. II*, 301 Ga. 323, 329 (801 SE2d 24) (2017), mandates that this case be decided under OCGA 51-3-1. We disagree. *Martin* answered a narrow question, whether Six Flags can escape liability for the foreseeable consequence of its failure to exercise ordinary care to keep its premises safe after a continuous string of gang related activity simply because the patron move off the premises to keep himself safe from his attackers. *Martin* does not involve landlord-tenant law or require that a choice be made between applying OCGA § 51-3-1 or OCGA § 44-714.

The mother further argues that the defendants had not fully parted with possession of the apartment where the shooting occurred because the model lease provided that the mother of the minor with the gun agreed not use the unit for unlawful purposes or engage in unlawful activities. The mother also points to language in the model lease that the defendants "shall have the right to enter any apartment at

reasonable hours . . . as they shall deem necessary for safety . . . or for the safety or convenience of the occupants."

The mother's argument, however is misplaced because "[t]hat the landlord retains the right to enter the leased premises for landlord-related purposes does not evidence such dominion and control of the premises so as to vitiate the landlord's limited liability imposed by OCGA § 44-7-14 and replace it with the liability imposed by OCGA § 51-3-1." (Citations and punctuation omitted.) *McCullough v. Reyes*, 287 Ga. App. 483, 486–87 (1) (651 SE2d 810) (2007); see *Starks v. USG Real Estate Foundation III*, 361 Ga. App. 406, 410 (864 SE2d 621) (2021). See *Lake v. APH Enterprises, LLC*, 306 Ga App. 317, 319 (702 SE2d 654) (2010) ("a landlord's right to inspect is not the equivalent of the right to possess premises, so as to make the landlord liable under OCGA § 44-7-14. . . . Landlords still fully part with possession of leased premises when they retain limited entry or inspection rights for landlord-related purposes. ") (citation and punctuation omitted.).

Accordingly, while we recognize that the circumstances here are tragic, under the plain language of OCGA 44-7-14, the Defendants are not liable for the negligence of the minor's mother in leaving the loaded weapon around her unsupervised children

because the Defendants had fully parted with possession of the apartment. See *Starks*, 361 Ga. App. at 414 (1) (holding that USG Real Estate Foundation had leased the entire property, including the Student Union, to the Board of Regents of the University and, despite maintaining a right of entry, thus was not liable for the shooting death of a student inside the Student Union); *McCullough*, 287 Ga. App. at 486 (1) (affirming the trial courts grant of summary judgment in favor of the defendants under OCGA § 44-7-14 because the landlords were not in possession of the property and thus not responsible for the negligence of their tenants in allowing a loaded shotgun to be left accessible to teenage boys resulting in the death of one of the boys).[3]

*Judgment affirmed in Case No. A23A1387; Judgment reversed in Case No. A23A1388. Dillard, P. J., and Pipkin, J., concur.*

---

[3] Because we find that the trial court should have directed a verdict in favor of the defendants on the entire case, we need not address the remainder of the mother's arguments or the additional arguments asserted by the Defendants.